James J. **BOCZAR** and Linda M. **Boczar,** Appellants–Defendants,

v.

**MERIDIAN STREET FOUNDATION,** et al., Appellees–Plaintiffs.

No. 49A02–0101–CV–24.

Court of Appeals of Indiana.

June 5, 2001.

James J. Boczar, Linda M. Boczar, Knox, Appellants pro se.

Roberta L. Ross, Ross & Brunner, Indianapolis, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants James J. Boczar and Linda M. Boczar (collectively, the Boczars) bring this interlocutory *pro se* appeal of the trial court's preliminary injunction in favor of the Meridian Street Foundation and twenty-three other plaintiffs-appellees (collectively, the Foundation). Specifically, the Boczars claim that issuance of temporary restraining orders and the prelimi-

nary injunction violated their First and Fourteenth Amendment rights of free speech and petitioning of the government. They also claim violation of their rights under Article I, Sections 9, 12, and 31 of the Indiana Constitution.

### FACTS

This case is an outgrowth of other litigation involving the Boczars. The Boczars own an Indianapolis house located within the area subject to the Meridian Street Preservation Act (MSPA).[1] The MSPA was enacted to preserve "a historic, scenic, esthetically pleasing, and unique" portion of Meridian Street in Indianapolis. IND. CODE § 36-7-11.2-1. Before renovating a home in the preservation district, a homeowner must obtain a "certificate of appropriateness" from the Meridian Street Preservation Commission. IND. CODE § 36-7-11.2-61. Wishing to renovate their house, the Boczars brought a proposed design before the Commission and obtained its approval. *Boczar v. Kingen*, No. IP 99-0141-C-T/G, 2000 WL 1137713, *4 (S.D.Ind. Mar. 9, 2000).

The Boczars later discovered that they could not afford to implement the design. *Id.* They changed their plans and began renovating their property but did not inform the Commission of their altered design. *Id.* Instead, the new builder took the new plans and the certificate of appropriateness to the Marion County Department of Development (DMD) to secure a construction permit. *Id.* at *5. The DMD issued the Boczars a permit based on the new plans. *Id.* Once the renovation was underway, neighbors complained to the commission that the project was unsightly and appeared to deviate from the original plans. *Id.* at *6.

---

1. The MSPA is codified at IND. CODE §§ 36-7-11.2-1 to -67.

The DMD ultimately revoked the Boczars' permit and issued a stop-work order. *Id.* at *7. The Boczars were allowed to continue work only on the roof and windows. *Id.* The DMD provided that the stop-work order would expire by the order of the city inspector and that the renovation could continue in accord with the new plans once the Boczars received approval from the Commission. The Commission denied the Boczars' request to amend their original certificate of appropriateness.

In response, the Boczars sued, among others, the Commission, the City of Indianapolis, and the DMD. *Id.* at *1. The Boczars argued: the MSPA was unconstitutional on its face and as applied; the defendants violated their Due Process rights under the Fourteenth Amendment and under the Indiana Constitution; the stop-work order was entered without authority; and the defendants' actions constituted a taking of the Boczars' property without just compensation. In a decision issued by Judge Tinder on March 9, 2000, the Boczars lost on each claim.

Subsequently, on August 9, 2000, the Foundation filed a complaint along with a motion for a temporary restraining order against the Boczars in state court. In its complaint, the Foundation requested that the trial court order all unapproved construction on the Boczars' property be removed. In its motion, the Foundation asked that the Boczars be restrained from "taking any action regarding construction or the seeking of permits or MSPC approval of the plans for the property located at 4821 North Meridian Street." Appellees' App. P. 113. The Foundation assert-

ed that the Boczars "intend to seek a fourth (4th) appearance before the MSPC to force the approval of the exact same design which has previously been denied." Appellees' App. P. 114. Affidavits attached to the motion indicated that the Boczars continued to build the unapproved structure despite the stop-work order.

The trial court granted a temporary restraining order *ex parte*. On October 13, 2000, the trial court granted the Foundation's motion to extend the temporary restraining order. On the same date, the Foundation requested that a preliminary injunction be entered and enforced against the Boczars until resolution of their complaint on the merits. A hearing was held on the motion for preliminary injunction on November 3, 2000. James proceeded *pro se* while Linda, though not appearing, adopted his arguments by written stipulation.

The trial court subsequently enjoined the Boczars "from taking any action to construct, improve, alter, petition for a certificate of appropriateness, seek permits for construction, or attempt to advance completion of the structure commonly known as 4821 North Meridian Street, Indianapolis, Indiana, pending a final hearing or further order of the Court." Appellants' App. P. 2. Pursuant to Ind.Appellate Rule 14(A)(5),[2] the Boczars present us with this interlocutory appeal.

## DISCUSSION AND DECISION

### I. Appellate Advocacy

■ The Boczars represent themselves on this appeal. Though James has re-

---

**2.** This latest version of the appellate rules provides:

Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the trial court clerk within thirty (30) days of the entry of the interlocutory order:

. . . .

(5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction[.]

App.R. 14(A)(5).

ceived legal training, "he is not currently in active practice as a litigator." *See Boczar*, 2000 WL 1137713, *1. Linda "is a medical doctor and claims no training in legal matters." *Id.* Regardless of their background, we hold *pro se* litigants to the same standards of civility and professional courtesy as admittees to the Indiana bar.

The Boczars' failure to follow rules of appellate procedure has impeded our review of their claim. First, the Boczars completely fail to cite supporting materials in their "Statement of the Facts." According to our new appellate rules, the statement of the facts *"shall be supported by page references* to the Record on Appeal or Appendix." Ind.Appellate Rule 46(A)(6)(a) (emphasis supplied). The Record on Appeal consists of the "Chronological Case Summary (CCS) and all papers, pleadings, documents, orders, judgments and other materials filed in the trial court . . . or listed in the CCS" and "all proceedings before the trial court . . . whether or not transcribed or transmitted" to our court. Ind.Appellate Rule 2(E) & (L). Under the new appellate rules regime, parties provide appendices to their brief that "present the Court with only those parts ·of the record on appeal" necessary for determination of the issues presented. Ind.Appellate Rule 50(A)(1). And "[a]ny factual statement shall be supported by a citation to the page where it appears in an Appendix." Ind.Appellate Rule 22(C). The Boczars did not support any factual statement with a citation to the record on appeal or appendix.

■ Second, the Boczars'· appellants' brief includes facts unsupported by the record, including miscellaneous conversations with a member of the Commission and an "attorney in the attorney general's office." Appellants' brief at 4. James purportedly "recorded" the conversation with the "attorney in the attorney gener-

al's office." Appellants' brief at 4. Matters outside the record cannot be considered by the court on appeal. *Zapffe v. Srbeny*, 587 N.E.2d 177, 180 (Ind.Ct.App. 1992), *trans. denied.* We must decide the case on the record before us and cannot speculate about the actual facts of a case. *Id.* Accordingly, we grant the Foundation's motion to strike these facts from the appellants' brief.

Third, in their brief to this court, the Boczars baselessly impugn the Marion County Superior Court, averring:

> The issuance of Temporary Restraining Orders by clerks of the Marion Superior Court, Civil Division is a common judicial practice. A Temporary Restraining Order can be obtained from a court clerk, if requested by a Marion County attorney, who has a friendly relationship with the court clerk. It is well known Marion County Superior Court practice that certain favored attorneys can obtain a temporary restraining order without notice for almost anything.

Appellants' brief at 2–3. They repeat the accusation a few paragraphs later: "Further it is a well-known practice for Marion County Superior Court clerks to issue orders in cases, where the state court plaintiffs are represented by a favored Marion County attorney and the defendant is pro se." Appellants' brief at 3–4.

■ "For the use of impertinent, intemperate, scandalous, or vituperative language in briefs on appeal impugning or disparaging this court, the trial court, or opposing counsel, we have the plenary power to order a brief stricken from our files and to affirm the trial court without further ado." *Clark v. Clark*, 578 N.E.2d 747, 748 (Ind.Ct.App.1991) (relenting from striking the entire brief out of concern for unduly punishing the offending attorney's client); *see also WorldCom Network Servs., Inc. v. Thompson*, 698 N.E.2d 1233,

1237 (Ind.Ct.App.1998) ("[T]he offensive material is so interwoven with legitimate argument that we have considered striking the entire submission. We have chosen instead to strike only the inappropriate portions of the Thompsons' petition and brief because we do not believe the Thompsons should be denied consideration of their appeal due to the excessive zeal of their attorneys."), *trans. denied. But see Michigan Mut. Ins. Co. v. Sports, Inc.,* 706 N.E.2d 555, 555 (Ind.1999) (striking appellant's petition to transfer for a "scurrilous and intemperate attack on the integrity of the Court of Appeals"). We accordingly strike the impertinent materials from appellants' brief. In the interest of helping all of the parties resolve this dispute, we choose to address the merits of the appeal.

## II. The Boczars' Claims

### A. Mooted Claims

█ The Boczars complain that the issuance of the temporary restraining orders violated their federal and Indiana constitutional rights. However, the orders are no longer in effect, having been superseded by the preliminary injunction. An appeal is moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 187 (Ind.Ct.App. 1998), *trans. denied.* As this court cannot render effective relief on the issue of the temporary restraining orders, the issue is moot.

### B. Preliminary Injunction

█ The Boczars next complain that the preliminary injunction violates their rights under Article I, Sections 9, 12, and 31 of the Indiana Constitution. The latest version of the Indiana Appellate Rules, just as the superseded one did, requires that each contention be supported by citation to authorities and logical argument. *See* Ind.Appellate Rule 46(A)(8)(a) (2001) (replacing Ind.Appellate Rule 8.3(A)(7) (2000)). Because the Boczars have failed to provide an analysis of their Indiana constitutional claims separate from the federal analysis, such claims are waived. *See South Bend Tribune v. Elkhart Circuit Court,* 691 N.E.2d 200, 202 n. 6 (Ind. Ct.App.1998) (holding claims under Article I, Section 9 of the Indiana Constitution waived for failure "to make any separate argument"), *trans. denied.*

The Boczars next contend that their rights to free speech and to petition their government, protected by the First and Fourteenth Amendments, were infringed by the injunction. Specifically, the Boczars maintain that the preliminary injunction unconstitutionally prevents them from appearing before the Commission to obtain a certificate of appropriateness. The preliminary injunction, in part, prohibits the Boczars "from taking any action ... to petition for a certificate of appropriateness." Appellants' App. P. 2. Nor may the Boczars "seek permits for construction" on the property. Appellants' App. P. 2. During the preliminary injunction hearing, the Boczars suggested that the most recent plans they submitted to the Commission were different from those already rejected. At the preliminary injunction hearing, they argued that they wished to go before the Commission once more "to make some changes to what the structure is there in order to bring it into compliance with what the ... Commission wants." Appellees' App. P. 20. The Boczars, however, made no showing to the trial court that the most recent plans they submitted are significantly different from the previously rejected ones.

█ It is within the sound discretion of the trial court to grant or deny a prelim-

inary injunction, and the scope of appellate review thereof is limited to whether there has been a clear abuse of that discretion. *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 915 (Ind.1993). In reviewing the trial court's action, we will not weigh conflicting evidence but will consider only the evidence supporting the trial court's findings, conclusions, and order. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 637 N.E.2d 1306, 1311 (Ind.Ct. App.1994).

An injunction is an extraordinary remedy that should be granted only with caution. *Day v. Ryan*, 560 N.E.2d 77, 83 (Ind.Ct.App.1990). "An injunction should be narrowly tailored, so that its scope is never 'more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted.' " *Id.* (quoting *F.W. Means & Co. v. Carstens*, 428 N.E.2d 251, 260 (Ind.Ct.App. 1981)). Moreover, the injunction should not be so broad as to prevent the enjoined party from exercising his rights. *Streif v. Bovinette*, 88 Ill.App.3d 1079, 44 Ill.Dec. 372, 411 N.E.2d 341, 346 (1980) (dissolving overbroad injunction preventing defendant from "making spurious complaints to governmental agencies concerning plaintiff's business activities"). If an injunction is more extensive than is reasonably necessary to protect a party's interests or unduly prevents a party from exercising his rights, we may remand to the trial court for revision. *See, e.g., Blair v. Anderson*, 570 N.E.2d 1337, 1340 (Ind.Ct.App.1991) (finding scope of the injunction too broad and remanding for trial court to revise).

The Boczars are precluded from relitigating the stop-work order and seeking approval for plans the Commission has already rejected. But to the extent that the Boczars are enjoined from petitioning the Commission to approve plans significantly different from the previously reject-

ed ones, the injunction is overbroad. Therefore, we reverse and remand with instructions for the trial court to revise the preliminary injunction. With regard to petitioning the Commission, the Boczars should be enjoined from seeking approval of plans not significantly different from the ones previously rejected. In all other respects, because the Boczars have shown no deficiency, the preliminary injunction stands.

### III. Foundation's Remaining Motions

#### A. Attorney Fees

In a separate motion, the Foundation has requested that we award it attorney fees in the amount of $3000 for responding to the Boczars' appeal. Generally, each party to litigation must pay his own attorney fees. *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 486 (Ind.Ct.App. 1998), *trans. denied.* Attorney fees are not allowable in absence of a statute or agreement of the parties. *Id.* With regard to appellate attorney fees, the latest version of the Indiana Rules of Appellate Procedure provides:

> The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution.

Ind.Appellate Rule 66(C) (2001) (replacing Ind.Appellate Rule 15(G) (2000)).

Our supreme court has cautioned Indiana appellate courts concerning the award of appellate attorney fees:

> [I]n exercising its discretionary power to award damages on appeal, an appellate tribunal must use extreme restraint. Notwithstanding the harmful delay occasioned by crowded judicial dockets and limited resources, we cannot fail to recognize that the imposition of punitive

sanctions does have significant negative consequences. It may punish, and will deter, the proper exercise of a lawyer's professional responsibility to argue for modification or reversal of existing law. It will have a chilling effect upon the exercise of the right to appeal. It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent.

*Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind.1987) (applying the now superseded App.R. 15(G)). Hence, the discretion to award attorney fees under App.R. 66(C) is limited to instances "when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *See id.* Just as *pro se* litigants are required to follow all of the rules of appellate procedure, they are liable for attorney fees when they disregard the rules in bad faith. *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind.Ct.App. 1990) ("[W]hen reviewing the question of whether attorney fees should be imposed as a sanction for failure to follow the rules of appellate procedure, we can cut the Watsons no slack simply because they have no formal legal training.").

▆▆▆ Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *Id.* To prevail on a substantive bad faith claim, the party must show that the "appellant's contentions and argument are utterly devoid of all plausibility." *Orr*, 512 N.E.2d at 153; 22 Stephen E. Arthur & Jerome L. Withered, *Indiana Practice: Civil Trial Practice* § 38.20, at 455 (1996). Procedural bad faith, on the other hand, occurs " 'when a party flagrantly disregards the form and content requirements of the Rules of Appellate Procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court.' " *John Malone Enters., Inc. v. Schaeffer*, 674 N.E.2d 599, 607 (Ind. Ct.App.1996) (quoting *Watson*, 559 N.E.2d at 1211). Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be shown. *Id.* Our supreme court has warned that such conduct can be "significantly more grave than mere lack of merit." *Posey v. Lafayette Bank and Trust Co.*, 512 N.E.2d 155, 156 (Ind.1987) (finding bad faith where, among other things, appellant disregarded appellate rule concerning statement of the facts).

▆▆▆ Turning to the instant case, because we have found that at least part of the Boczars' appeal was plausible, indeed meritorious, the Foundation is not entitled to recover full appellate attorney fees. *See Orr*, 512 N.E.2d at 153. However, given the Boczars' inclusion of facts not found in the record and complete failure to cite any statement in their "Statement of the Facts," the Boczars should compensate the Foundation for the fees it incurred in addressing their "Statement of Facts" and fees incurred in preparing the "Motion To Strike Improper Inclusion of Facts." The trial court is in the best position to hear evidence and make a determination as to those fees incurred by the Foundation in preparing and filing the motion to strike and fees incurred in addressing the Boczars' "Statement of the Facts" on appeal. Therefore, we remand to the trial court for a determination of an appropriate award.

### B. "Motion To Investigate"

The Foundation also submitted to this court a "Motion To Investigate Signature of Appellant Linda Boczar." The Foundation contends that Linda's signature on the Appellants' brief is strikingly similar to James's and unlike her signature on other documents. If James signed Linda's name to the brief, the Foundation reasons that

James has committed the unauthorized practice of law in Indiana. Accordingly, they ask this court "to order an investigation" by the Indiana Supreme Court Disciplinary Commission.

■ This court has no authority to "order" an investigation by the Disciplinary Commission. Rather, to initiate an investigation any member of the public or the Indiana bar, among others, may file a written, verified claim of misconduct with the Disciplinary Commission. Ind.Admission and Discipline Rule 23, § 10(a). Therefore, the Foundation or counsel for the Foundation may file a claim for misconduct.

■ To the extent that the Foundation wishes to investigate James's purported unauthorized practice of law, it would do well to rethink the issue of Linda's signature. "One spouse may constitute the other spouse as agent either expressly or impliedly...." *Uland v. Nat'l City Bank of Evansville,* 447 N.E.2d 1124, 1128 (Ind. Ct.App.1983). Under the circumstances here, there appears to be no prohibition against Linda's designating James as her agent for the purpose of signing her name to Appellants' brief.

### CONCLUSION

In sum, we remand this case to the trial court to revise the preliminary injunction and determine appropriate attorney fees in a manner not inconsistent with this opinion. We grant the Foundation's motion to strike the Boczars' improper inclusion of facts but deny its motion to investigate Linda Boczar's signature.

Judgment affirmed in part, reversed in part, and remanded.

BAILEY, J., and MATHIAS, J., concur.