**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 25 2012, 8:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYs FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**JOANNE M. KOLBE**
Warsaw, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL J. VANDERPOOL**
Vanderpool Law Firm, PC
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JENNIFER HUTCHENS, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 43A04-1107-DR-395 |
| | ) | |
| GREGORY SAUSAMAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Joe V. Sutton, Special Judge
Cause No. 43C01-0601-DR-10

**January 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jennifer Hutchens ("Mother") appeals the trial court's order of June 15, 2011, granting custody of her child L.S. to Gregory Sausaman ("Father").[1] Mother raises one issue, which we revise and restate as whether the trial court erred in entering its June 15, 2011 order. Father raises the issue of whether he is entitled to appellate attorney fees. We affirm.

The relevant facts follow. Father and Mother were married, and two children were born of the marriage. Sausaman v. Hutchens, No. 43A03-1008-DR-421, slip op. at 2 (Ind. Ct. App. Feb. 28, 2011), trans. denied. When the parties' marriage was dissolved on March 30, 2006, their son, C.S., was fourteen years old, and their daughter, L.S., was seven years old. Id. Father and Mother agreed that Mother would have primary custody of the children. Id.

In early 2008, Mother remarried. Id. at 4. No one, including the children, was told about the remarriage until after it had occurred. Id. After the marriage, Mother traveled to Alaska with her husband on a trip, and told Father that she would likely be moving to Alaska, where her new husband is from, within two years. Id. On August 15, 2008, Mother left L.S. in Father's custody and moved to Alaska with her husband. Id. No formal order modifying custody was sought by either party. Id. Father understood the parties' agreement to be that L.S. would live with him during the school years and

---

[1] We note that Mother also appears to present arguments related to the trial court's June 8, 2011 order denying Mother's motion to present additional evidence. However, Mother's July 13, 2011 notice of appeal was not filed within thirty days of the June 8, 2011 order, and thus Mother's appeal as to that order is untimely. See Ind. Appellate Rule 9(A) (addressing appeal from final judgment); Ind. Appellate Rule 14 (addressing interlocutory appeals).

with Mother during summer breaks. Id. Mother visited L.S. when she visited Indiana in March 2009. Id. at 4.

At some point during the spring of 2010, Father received a phone call from Mother, who was irate that he had allowed L.S. to attend a birthday party with Mother's brother and sister-in-law because Mother was on bad terms with her sister-in-law. Id. at 5. During the phone call, Mother made a comment that she had custody of L.S. and had the right to decide what her daughter could and could not do. Id.

Father became concerned as a result of that conversation, and on April 29, 2010, he filed a petition for emergency custody regarding both children. Id. The petition noted that L.S. had lived with Father since Mother moved to Alaska in August 2008 and that L.S. had seen her mother only once, for a period of three days, since that time. Id. at 5-6. The trial court granted the petition on the same day, and set the matter for a full hearing. Id. at 6.

L.S. traveled to Alaska during the summer of 2010. Id. When it was time for L.S. to return home, Father made arrangements to pick her up at the airport in Chicago. Id. When Father arrived at the airport, L.S. and Mother, who had traveled with her daughter, were not there. Id. After unsuccessful attempts to contact L.S. and Mother, Father called L.S.'s grandmother, who explained that she was on her way to pick up Mother and L.S. in Indianapolis. Id. Mother later texted Father and told him that he would not see L.S. unless she allowed it, as she had custody of L.S. Id.

On August 10, 2010, the hearing on Father's motion to modify the parties' custody arrangement began. Id. At the hearing, the parties presented evidence, Mother orally

3

moved for judgment on the evidence, and after hearing argument the trial court granted Mother's motion. Id. Father appealed. Id. at 7.

In an opinion dated February 28, 2011, this court treated the trial court's ruling as a final judgment at the close of a bench trial. Id. at 9. The court then addressed the admission of certain evidence and the trial court's ruling as to modification under Ind. Code § 31-17-2-8, evaluated the evidence in the record and found that Father had met his burden of establishing a substantial change in the section 8 factors and showing that a modification was in L.S.'s best interests. Id. at 9-18. Accordingly, this court reversed the judgment of the trial court and remanded for proceedings consistent with its opinion. Id. at 18. On March 3, 2011, Father filed a motion for immediate return of child. Mother sought transfer following this court's February 28, 2011 opinion, and the Indiana Supreme Court denied the request on May 13, 2011. On May 17, 2011, Father filed another motion for order for immediate return of child and for award of appellate and further fees.

On May 18, 2011, Mother filed a motion to reconvene hearing for additional evidence. On May 23, 2011, the court held a status conference at which it ordered L.S. returned to Father on or before June 1, 2011, and set a hearing on procedural issues for June 8, 2011. The court's chronological case summary ("CCS") shows that, on May 25 and May 31, 2011, Mother filed "unsolicited fax information" with the trial court. Appellant's Appendix at 7.

On May 31, 2011, Mother filed a verified motion for emergency relief as to custody and parenting time related to L.S. In the motion, Mother argued that she had

4

made attempts to arrange for Father to have parenting time but he refused to communicate about parenting time arrangements, that Father engaged in conduct with Mother that a judicial body in Alaska determined to be so inappropriate as to warrant the issuance of a protective order,[2] and that L.S. had been counseling with a mental heath therapist and that upon learning she was being returned to her father L.S. experienced extreme emotional distress, and Mother requested that "the Court's existing directive regarding the transfer of the child from Alaska to Indiana, to [Father's] care and custody, be lifted, given the minor child's extreme emotional distress." Id. at 49. On June 1, 2011, Father filed a response to Mother's motion for emergency relief arguing that Mother's emergency filing was "another attempt on her part to attempt to skirt the decision of the Court of Appeals," that Mother's "continuous filings in both Indiana and the state of Alaska are a part of continuing pattern of activity to abusively use the court process to [Father's] detriment," that Mother was aware that the Court of Appeals had overturned the trial court's decision but nevertheless registered the decision with the Alaska courts, and that he was required to hire an attorney in Alaska on the protective order petition.[3] Id. at 62. On June 7, 2011, Mother filed a motion to vacate hearing on June 8, 2011 due to lack of jurisdiction. Also on June 7, 2011, Mother filed a memorandum of law in support of her motion to reconvene hearing in which she argued

---

[2] On May 16, 2011, a court in Alaska granted Mother's request for a protective order. The order provided that any issues related to the minor child be addressed in Indiana. Also, on May 31, 2011, a court in Alaska under a different cause number granted Mother's request for a twenty-day *ex parte* protective order, which expired on June 23, 2011.

[3] The CCS does not appear to show that the trial court expressly ruled on Mother's May 31, 2011 motion for emergency relief.

5

that the trial court has the discretion to allow a party to reopen its case when there is a change in circumstances and facts surrounding the case, and that such circumstances existed in this case.

On June 8, 2011, the court held a hearing on procedural matters at which Mother orally moved for the recusal of the trial judge. The court entered an order denying Mother's motions to present additional evidence and to vacate for lack of jurisdiction. The court's order also provided in part:

> Discussion is held in regard to the certified Court Of Appeals decision in this case, [Father's] Motions For Immediate Return of Child, the absence of the minor daughter (L.S.) from Kosciusko County despite court order, jurisdictional issues due to [Mother's] recent protection orders granted in Alaska against [Father] on behalf of [Mother] and minor daughter and the Court notifying counsel that [Mother] had made numerous phone calls to the court staff and filed faxes as well with the Clerk. Faxes were copied to counsel for the parties and phone calls were not forwarded to the judge. When asked by [Mother's] counsel if the Court found the calls and faxes annoying the response was "yes". When asked if the calls and faxes would affect [Mother's] credibility the Court responded "it could at future hearings".
>
> * * * * *
>
> [Mother], by counsel, orally moves for the judge to enter an order of recusal for bias. The Court denies the oral motion for recusal. The Court finds the inappropriate communications of [Mother] to be annoying and potentially damaging to credibility in the future, but not a reason for recusal at this stage of the proceedings. The trial court is faced with the administrative task of entering an order that is consistent with the Indiana Court of Appeals decision in this case.

Id. at 15.

On June 10, 2011, Mother filed a motion for change of judge for cause in which she alleged that on June 8, 2011, the court disclosed to counsel that Mother had directed filings to the court and "also directed communications to the Court, which were

6

intercepted by the court staff," that Mother's conduct "in the Court's estimation, has caused [Mother's] credibility to be put into question with the Court," and that "the Court, as a result, has lost objectivity with regard to [Mother]." Id. at 89. Mother then argued judicial bias and requested a change of venue as to judge.

On June 15, 2011, the court ordered L.S. to be returned to Father. The CCS entry states:

> Pursuant to the certified Indiana Court of Appeals Opinion of May 18, 2011 [sic], the Court grants [Father's] Petition For Modification Of Custody. The Court grants physical custody of the minor child, L.S., to [Father]. The Court also grants [Father's] Motion For Immediate Return Of Child. The court orders [Mother] or designated third party to deliver L.S. to the Kosciusko County Sheriff's Department within seven (7) days.

Id. at 9.

On June 21, 2011, Mother filed a request for ruling on her motion for recusal and a motion to set aside court order. On June 22, 2011, the court granted the motion for recusal. On July 13, 2011, Mother filed a notice of appeal with respect to the June 8 and June 15, 2011 orders.[4]

I.

The first issue is whether the trial court erred in entering its June 15, 2011 order. Mother maintains that the court abused its discretion in ordering the return of L.S. to Father after the trial judge admitted bias against Mother and Mother's motion for recusal had been filed. Mother states that she "does not seek to defend her actions and acknowledges that the ex parte contacts were improper" and argues that the court "stated

---

[4] As previously noted, the notice of appeal was untimely as to the June 8, 2011 order.

it was annoyed with her because she had sent faxes to the court and called the court" and that "[t]he trial court said the changing allegations made in the faxes probably affected her credibility with the court." Appellant's Brief at 4-5. Mother argues that the court was "not called on to merely enter a judgment in accordance with the mandate of the opinion from the appeal," that "[t]here was a motion to reconvene the hearing to present additional evidence," that "[t]here was a motion for emergency relief based on father's failure to exercise parenting time," and that "[t]hose are discretionary matters that were before the trial court." Id. at 5. Mother argues that "[a]n appellate decision ceases to be the law of the case when the facts before the trial court change," that "[e]vidence of the physical and sexual abuse of the daughter by the father was not considered at the prior custody hearing," and that "[s]uch evidence would render inapplicable the opinion in the prior appeal under the law of the case doctrine." Id. at 6. Mother also argues that "[t]he failure of the former special judge to disqualify himself as soon as his bias had developed certainly gives rise to a reasonable question as to his impartiality," citing, among other authority, Ind. Judicial Conduct Rule 2.11(A)(1).[5] Id. at 8.

Father argues that the court's order entered on June 8, 2011 "found that the judge was not biased and prejudiced against [Mother] to a sufficient degree to require him to

---

[5] Ind. Judicial Conduct Rule 2.11 provides in part:

(A)  A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1)  The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

recuse on the issues before the Court on June 8, 2011" and that "[w]hile the judge found [Mother's] communications to be 'annoying' and 'potentially damaging to her credibility in the future', the Court further found that they were not a reason for recusal at that time." Appellee's Brief at 7. Father argues that judges are presumed to be unbiased and are credited with the ability to remain objective notwithstanding their exposure to information that might tend to prejudice lay persons. Father asserts that the trial judge "simply followed the directives of the Court of Appeals." Id. at 9. Father further argues that "[w]hile [Mother] may pursue a modification in the trial court, she is required to do so with the presumption in favor of [Father] as the custodial parent, and it is her burden to show the requisite change of circumstances." Id.

In her reply brief, Mother argues that "[t]he trial court failed to recognize that a change in circumstances can render the prior appellate opinion to cease to be applicable." Appellant's Reply Brief at 3. Mother also argues that "[a] reasonable person looking at the statements of the judge in this case and his refusal to allow [her] to present additional evidence relating to the best interests of the child or to a custody modification would question the impartiality of the judge." Id. at 3-4.

We note that Father requested a modification of custody of L.S. and that, at the hearing on the motion, the trial court granted Mother's motion on the evidence. See Sausaman, No. 43A03-1008-DR-421, slip op. at 2. Father appealed, and we reversed the trial court's decision in our February 28, 2011 opinion. Id. Specifically, we treated the trial court's ruling as a final judgment at the close of a bench trial, found that Father had met his burden of establishing a substantial change in relevant factors and showed that a

9

modification was in L.S.'s best interests, and reversed the judgment of the trial court and remanded for proceedings consistent with the opinion. See id. at 9-18. The Indiana Supreme Court later denied transfer.

We observe that the court stated in its June 8, 2011 order that, when it was asked if it "found the calls and faxes annoying the response was 'yes'" and that "[w]hen asked if the calls and faxes would affect [Mother's] credibility the Court responded 'it could at *future* hearings.'" Appellant's Appendix at 15 (emphasis supplied). We note that the June 15, 2011 order challenged here on appeal merely reverses its previous finding in favor of Mother in connection with Father's request for modification of custody and granted custody to Father in accordance with this court's February 28, 2011 opinion. See id. at 9; Sausaman, No. 43A03-1008-DR-421, slip op. at 18. Indeed, the trial court noted in its June 8, 2011 order, that "[t]he trial court is faced with the administrative task of entering an order that is consistent with the Indiana Court of Appeals decision in this case." Appellant's Appendix at 15. In our February 28, 2011 opinion, we examined the nature of the evidence and the trial court's ruling and concluded that "we [would] treat the trial court's ruling as a final judgment at the close of a bench trial." Sausaman, No. 43A03-1008-DR-421, slip op. at 9. We then reviewed the court's ruling in favor of Mother on the issue of Father's request for a modification of custody and reversed based upon the evidence in the record. See id. at 11-18. We noted that "L.S. had been living solely with [Father] for nearly two years and had been living primarily with him for years before that," that "[s]he was thriving," and that "[i]t was erroneous to try to 'fix' that situation by uprooting her from her community, school, extended family, brother, and

father." Id. at 18. In sum, the court's order on June 15, 2011, granting custody of L.S. to Father was consistent with this court's instructions on remand.

To the extent that Mother argues that the trial court was "not called on to merely enter a judgment in accordance with the mandate of the opinion from the appeal" because she had filed motions to present additional evidence and for emergency relief and that "[t]hose are discretionary matters that were before the trial court," see Appellant's Brief at 5, we note that the court did not rule on those motions in its June 15, 2011 order and Mother does not timely appeal the court's June 8, 2011 order.

The trial court did not err in entering its June 15, 2011 order.

## II.

The next issue is whether Father is entitled to appellate attorney fees. Ind. Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees is limited to instances when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Orr v. Turco Mfg. Co., Inc., 512 N.E.2d 151, 152 (Ind. 1987). An appellate tribunal must use extreme restraint in exercising its discretionary power to award damages on appeal "because of the potential chilling effect upon the exercise of the right to appeal." Tioga Pines Living Ctr., Inc. v. Ind. Family & Social Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied. Indiana appellate courts have classified claims for appellate attorney fees into substantive and procedural bad faith claims. Boczar v.

11

Meridian St. Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show the appellant's contentions and arguments are utterly void of all plausibility. Id. Substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Wallace v. Rosen, 765 N.E.2d 192, 201 (Ind. Ct. App. 2002).

Father maintains that "[t]his case is one of the most clear cases of frivolous appeal as the Court may ever address," that Mother "is saying that the trial judge had the discretion to ignore the order of the Court of Appeals," that "[a]lthough [Mother] dresses her request in the finery of a denial of an immediate recusal, it is clear that she simply wants to create more delay in the enforcement of this Court's order," and that "if the Court were to grant her relief on appeal, then the matter would go back to the newly appointed trial judge, who would then be obligated to enter the very same orders." Appellee's Brief at 10-11. To succeed, Father must show that Mother's contentions and arguments are "utterly devoid of all plausibility." Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003) (citing Boczar, 749 N.E.2d at 95).

While it is true that Mother's arguments in this appeal were unpersuasive, Mother attempted to support her argument with legal authority from which an argument could have been made. Based upon our review of the evidence in the record on appeal, we do not find Mother's contentions utterly devoid of all plausibility. Accordingly, we deny Father's request for appellate attorney fees. See Taflinger Farm v. Uhl, 815 N.E.2d 1015, 1019 (Ind. Ct. App. 2004) (holding that the appellee should not receive appellate attorney fees where the appellant supported his challenge with pertinent legal authority from

12

which an argument could have been made and noting that the appellant's contentions were not utterly devoid of all plausibility).

For the foregoing reasons, we affirm the trial court's order dated June 15, 2011, and we deny Father's request for appellate attorney fees.

Affirmed.

MAY, J., concurs.

CRONE, J., concurs and dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JENNIFER HUTCHENS,    )
    )
    Appellant-Respondent,    )
    )
    vs.    )    No. 43A04-1107-DR-395
    )
GREGORY SAUSAMAN,    )
    )
    Appellee-Petitioner.    )

**CRONE, Judge, concurring in part and dissenting in part**

I agree with the majority's determination that the trial court did not err in entering its June 15, 2011 order. I respectfully disagree, however, with its denial of Father's request for appellate attorney fees. To reiterate, Appellate Rule 66(E) says that this Court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." Mother's appeal is a baseless and transparent attempt to overturn this Court's previous ruling, which the trial court had no discretion or authority to disregard. Any claim of judicial bias or change of circumstances affecting custody should have been addressed in a subsequent proceeding. Mother's attempt to "support her argument with legal authority" does not make her appeal any less frivolous.

14

I would grant Father's request for appellate attorneys' fees and remand for a hearing as to the proper amount.