**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**NANCY A. McCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

**THOMAS M. LEATHERMAN**
Leatherman & Miller
Goshen, Indiana

APPELLEE *PRO SE*:

**VICTOR LYNN WEBER**
Crane, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| | ) | |
| DEBRA ANN FIORITTO (WEBER), | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1303-DR-73 |
| | ) | |
| VICTOR LYNN WEBER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-0807-DR-132

**October 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Petitioner Debra Ann Fioritto's ("Wife") marriage to Appellee-Respondent Victor Lynn Weber ("Husband") was dissolved in Minnesota on October 4, 2007. The dissolution decree ("the Decree") included, *inter alia*, provisions regarding spousal maintenance to be paid by Husband. The Decree provided that on February 1 of each year, the amount of maintenance, if owed, would be recalculated based on the parties' gross incomes from the previous year. Moreover, if Wife's income for the previous year exceeded 68% of Husband's, then no maintenance would be owed for that year.

On August 27, 2012, Wife filed an amended motion to enforce alimony, alleging that Husband had underpaid her in 2009 and 2012 and owed her a total of $19,995.32. On October 11, 2012, the trial court issued its ruling, concluding that Husband owed no maintenance for 2009 but a total of $12,141.54 through October of 2012. Wife contends that the trial court erred in calculating the parties' gross incomes for 2008 pursuant to the Decree because it included Husband's 2008 maintenance payments in her gross income and deducted them from his. Wife also contends that the trial court abused its discretion in denying her request for attorney's fees and requests that we award her appellate attorney's fees. We affirm in part, reverse in part, remand with instructions, and deny Wife's request for appellate attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife married in 1979, and, on October 4, 2007, Husband and Wife's marriage was dissolved in Minnesota. The Decree included the following provisions:

35. The parties agreed to spousal maintenance provisions as follows:

[Husband] permanently waives all spousal maintenance from [Wife]. There shall be no spousal maintenance payable by [Husband] to [Wife] for the months of October and November, 2007. [Husband] shall thereafter pay [Wife] spousal maintenance commencing December 1, 2007, and continuing through the earlier of December 14, 2019 (i.e., [Husband's] attaining the age of 64 years and one month) or death of [Wife]; death of [Husband]; or remarriage of [Wife].

[Wife's] permanent spousal maintenance shall be calculated as follows:

Commencing December 1, 2007, and continuing until there is no child support obligation owed for [child J.W.], as and [sic] for spousal maintenance, [Husband] shall pay to [Wife] ten per cent (10%) of his gross income from all sources which shall be due and payable on the first day of the month and calculated as follows: The first time, [Husband's] new gross annual income shall be averaged into a monthly amount by dividing the annual amount by 12 and the 10% formula shall be applied to arrive at a monthly spousal maintenance payment. The minimum spousal maintenance payment shall be $500.00 a month. Any gross income in excess of $100,000.00 shall not be subject to the formula. That amount will then be set until the following February 1, at which time the parties shall exchange W-2's and tax returns for all sources of income. At that time spousal maintenance shall be recalculated by applying the same formula as above, and resetting the amount to remain unchanged until the next February 1st. If [Wife's] gross income from all sources, (excluding IRA withdrawals during 2007) before the exchange of spousal maintenance, is equal to or greater than 68% of [Husband's] gross income from all sources, spousal maintenance for that year shall be suspended until February 1st of the next year and a new comparison. [(the previous sentence shall subsequently be referred to as "the Suspension Clause")] When there is no longer an obligation of child support owed for [J.W.], (which the parties anticipate will be as of June 30, 2009) [Wife's] spousal maintenance shall be determined by the following percentages and as described below:

| | |
|---|---|
| $50.000.00 to less than $60,000.00 | 15% of gross |
| $60,000.00 to less than $70,000.00 | 16% of gross |
| $70,000.00 to less than $80,000.00 | 17% of gross |
| $80,000.00 or more | 18% of gross, capped at $100,000.00 gross income |

From December 1, 2007, forward, the minimum spousal maintenance payment shall be $500.00 a month. Any gross income in excess of

3

$100,000.00 shall not be subject to the formula, which will create a maximum monthly spousal maintenance payment of $1,500.00. The amount of spousal maintenance will then be set until the following February at which time the parties shall exchange W-2's and tax returns for all sources of income. At that time spousal maintenance shall be recalculated by applying the same formula as above, and resetting the amount to remain unchanged until the next February 1st. If [Wife's] gross income from all sources, before the exchange of spousal maintenance, is equal to or greater than 68% of [Husband's] gross income from all sources, spousal maintenance for that year shall be suspended until February 1st of the next year and a new comparison, until termination as provided above. When child support for [J.W.] ends, (anticipated to be June 30, 2009), there will be a one-time, non-February 1st mid-year review and recalculation of [Husband's] spousal maintenance obligation, based upon [the parties'] incomes from the immediately prior Feb. 1st review. There after [sic] spousal maintenance will remain the same until reviewed the following February 1st.

….

The parties intended that the maintenance payable to [Wife] in accordance herewith shall be included in [Wife's] gross income, pursuant to Section 71 of the Internal Revenue Code, and shall be deductible by [Husband], pursuant to Section 215 of the Internal Revenue Code.

Appellant's Confidential Addendum pp. 6-9.

On August 27, 2012, Wife filed an amended petition to enforce alimony, alleging that Husband owed her $625.00 per month from February through June of 2009, $1062.50 per month from July of 2009 through January of 2010, and $1348.26 per month from February of 2012 through February of 2013, none of which he had paid.

On August 31, 2012, the trial court held a hearing, at which exhibits were accepted and argument heard. While Husband conceded that his spousal maintenance payments from February 1, 2012, to February 1, 2013, would be "$1,349 per month[,]" he argued that he owed nothing for 2009. Tr. p. 19. Essentially, for purposes of the Suspension Clause, Husband argued that the spousal maintenance he paid in 2008 should be deducted

4

from his gross income and subtracted from Wife's for purposes of determining whether her income reached the 68% threshold for suspension of spousal maintenance. On October 11, 2012, the trial court issued its order disposing of Wife's petition. The trial court concluded the following regarding spousal maintenance for 2009, essentially adopting Husband's argument regarding the Suspension Clause:

### 1. 2009 MAINTENANCE

The Court determines that no maintenance is due for 2009. Husband's [2008] gross pay was $75,000.00. Husband also received V.A. Income of $1,524.00, for a total of $76,524.00. Because alimony is charged as income to Wife, it should be subtracted from Husband's gross income. Husband's income tax return states that he paid $7,640.00; Wife's income tax return states that she received $7,572.00 for the same period. The difference is not substantial in this evaluation because using either figure, Wife's income exceeds 68% of Husband's: $46,841.12 or $46,887.36, respectively. Wife's gross income includes her pay [of] $43,481.00 plus alimony [of] $7,640.00 or $7,572.00: $51,121.00 or $51,053.00, respectively. Thus, no alimony is due for 2009.

The re-calculation for June 2009 uses the same income figures as the previous February, meaning that no maintenance is due.

Appellant's App. p. 42 (footnote omitted). The trial court also concluded that Husband's spousal maintenance obligation would be $1349.06 per month from February of 2012 through February of 2013. Finally, the trial court denied Wife's request for attorney's fees, concluding that both Husband and Wife had the ability to pay their own attorney's fees. On February 6, 2013, the trial court denied both parties' motions to correct error.

### DISCUSSION AND DECISION

### I. Spousal Maintenance

Where, as apparently happened here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine

5

whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id.* We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence most favorable to the judgment. *Id.* Further, "findings made *sua sponte* control only … the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

The trial court found, and neither party disputes, that the Decree provisions regarding spousal maintenance were part of a negotiated settlement. "A property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent." *Myers v. Myers*, 560 N.E.2d 39, 42 (Ind. 1990). "A property settlement that is incorporated into a final divorce decree is a binding contract, and the dissolution court may not modify that settlement absent fraud, duress, or undue influence." *Rothschild v. Devos*, 757 N.E.2d 219, 223 (Ind. Ct. App. 2001); *see* Ind. Code § 31-15-7-9.1 (2009) ("[O]rders concerning property disposition … may not be revoked or modified, except in case of fraud."). "A strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties or the court mandates the division of the property among the parties." *Poppe v. Jabaay*, 804 N.E.2d 789, 793 (Ind.

6

Ct. App. 2004) (citing *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind. Ct. App. 1993)), *trans denied*. "One purpose of this policy is to eliminate vexatious litigation which often accompanies the dissolution of a marriage." *Id.* (citing *Lankenau v. Lankenau*, 174 Ind. App. 45, 365 N.E.2d 1241, 1244 (1977)).

Turning to the terms of the Decree,

> [w]hen construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. [*Estate of Penzenik v. Penz Prods., Inc.*, 800 N.E.2d 1007 (Ind. Ct. App. 2003), *trans. denied.*] First, we must determine whether the language of the contract is ambiguous. "The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts." *Id.* at 1010. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact-finder. [*Id.* at] 1007. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by examining the language used in the instrument to express their rights and duties. *Id.* We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict. *Id.*

*Whitaker v. Brunner*, 814 N.E.2d 288, 293-94 (Ind. Ct. App. 2004), *trans. denied*.

The only real question before us is whether spousal maintenance paid in 2008 is to be used in calculating the parties' gross income for purposes of the Suspension Clause. If so, Wife's 2008 gross income exceeds the 68% threshold, thereby relieving Husband of any spousal maintenance obligations beginning in February of 2009. Wife argues that the parties' 2008 gross income, for purposes of the Suspension Clause, should not take account of spousal maintenance paid (and received) that year.

7

We agree with Wife. As previously mentioned, the Suspension Clause provides that "[i]f [Wife's] gross income from all sources, before the exchange of spousal maintenance, is equal to or greater than 68% of [Husband's] gross income from all sources, spousal maintenance for that year shall be suspended until February 1st of the next year and a new comparison[.]"[1] Appellant's Confidential Addendum p. 8. Although the Suspension Clause could perhaps have been more artfully drafted,[2] we conclude that the only possible purpose for the phrase "before the exchange of spousal maintenance" is to remove spousal maintenance from Wife's gross income calculation for purposes of the Suspension Clause. The language in question is modifying "gross income," and, before the exchange of spousal maintenance, that amount will be lower. Husband has not suggested any other interpretation that makes any sense, and none has occurred to us. Additionally, from the Suspension Clause it is just as clear that spousal maintenance payments are not to be deducted from Husband's gross income: His side of the equation refers to his "gross income from all sources," a phrase that, unlike the parallel language regarding Wife's gross income, is not modified or limited in any respect.

Husband argues that the following provision supports a conclusion that his spousal maintenance payments should factor into the Suspension Clause calculation: "The parties intended that the maintenance payable to [Wife] in accordance herewith shall be

---

[1] This version of the Suspension Clause applies to spousal maintenance following the termination of child support for J.W., which all agree occurred on June 30, 2009. The version of the Suspension Clause that applies to spousal maintenance prior to the termination of child support for J.W. specifically excluded IRA withdrawals for 2007 but is otherwise identical. The parties' respective 2007 incomes are not at issue in this appeal.

[2] For one thing, use of the word "exchange" implies that Husband is receiving something from Wife in return for his spousal maintenance payments, which, of course, is not the case.

included in [Wife's] gross income, pursuant to Section 71 of the Internal Revenue Code, and shall be deductible by [Husband], pursuant to Section 215 of the Internal Revenue Code." Appellant's Confidential Addendum p. 9. We cannot agree with this suggested interpretation. We conclude that the modifying phrases referring to provisions of the Internal Revenue Code limits this provision to detailing the intended tax consequences of the spousal maintenance, which does not necessarily have anything to do with the calculation of the amount of spousal maintenance.

Because the trial court erred in concluding that Husband's spousal maintenance payments should be included in calculations pursuant to the Suspension Clause, we shall determine if Husband had an obligation for 2009 and, if so, the amount of that obligation. It is undisputed that Husband's 2008 gross income from all sources was $76,524.00 and that Wife's gross income, excluding spousal maintenance, was $43,481.00, which is 57% of Husband's. Husband was therefore obligated to pay spousal maintenance in 2009. For February through June, the amount of the monthly payment is determined by dividing Husband's gross income for all of 2008 by twelve and multiplying by 10%, which comes to $637.30. Upon the child support obligation for J.W. ending on June 30, 2009, the monthly payment is to be recalculated using the same income figures as the February calculation, but no longer using the 10% amount. For July of 2009 through February of 2010, because Husband's gross income fell between $70,000.00 and $80,000.00, his spousal maintenance obligation is now 17%, which comes to a monthly payment of $1084.09. Altogether, Husband's spousal maintenance obligation for the period from

9

February of 2009 through January of 2010 is $10,775.13. We remand with instructions for the trial court to alter its judgment accordingly.

## II. Attorney's Fees

### A. Attorney's Fees in the Trial Court

Wife contends that the trial court abused its discretion in denying her request for attorney's fees generated in maintaining this action. Indiana Code section 31-15-10-1 provides, in part that

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

"However, the trial court's decision to grant or to deny attorney fees will not be disturbed absent an abuse of discretion." *Stratton v. Stratton*, 834 N.E.2d 1146, 1152 (Ind. Ct. App. 2005). Wife's argument is essentially that the ability to pay attorney's fees is not specifically mentioned in section 31-15-10-1 and so should not be considered at all. This simply does not follow, and we can imagine any number of scenarios where one party's ability to pay legal fees would be a very relevant consideration. In the absence of any indication of bad faith or vexatious intent on Husband's part, Wife has failed to establish that the trial court abused its discretion in this regard. We affirm the trial court's denial of Wife's request for attorney's fees.

### B. Appellate Attorney's Fees

Wife also requests that we award her appellate attorney's fees. Indiana Appellate Rule 66(E) provides, in part, "The Court may assess damages if an appeal, petition, or motion, or response is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees."

> Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Orr v. Turco Mfg. Co., Inc.*, 512 N.E.2d 151, 152 (Ind. 1987). Additionally, while Indiana Appellate Rule 66(E) provides this Court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Tioga Pines Living Ctr., Inc. v. Indiana Family and Social Svcs. Admin.*, 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), *trans. denied.*
> Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *Boczar v. Meridian Street Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id.* Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.* Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Id.* Finally, we note that even pro se litigants are liable for attorney's fees when they disregard the rules of procedure in bad faith. *Srivastava*, 779 N.E.2d at 61; *see also Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind. Ct. App. 1990) (stating that the court could "cut [the pro se litigants] no slack simply because [they] have no formal legal training.").

*Thacker v. Wentzel*, 797 N.E.2d 342, 346-47 (Ind. Ct. App. 2003).

We decline Wife's request for appellate attorney's fees. There is no indication of bad faith or frivolity in Husband's Brief of Appellee, and, while we have found in Wife's favor on the merits of this appeal, we cannot say that Husband's position in this case was

utterly implausible. Moreover, although Husband's *pro se* brief was noncompliant with the Appellate Rules in many respects, we see no indication of flagrant disregard of the Rules, and the brief's shortcomings did not hinder our ability to address the merits of this appeal. Wife's request for appellate attorney's fees is declined.

We affirm the judgment of the trial court in part, reverse in part, remand, with instructions, and deny Wife's request for appellate attorney's fees.

BAILEY, J., and MAY, J., concur.