**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**JOHNNY W. ULMER**
Cataldo Law Offices, Inc.
Bristol, Indiana

ATTORNEY FOR APPELLEES:

**DEBRA VOLTZ-MILLER**
Debra Voltz-Miller & Associates
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| D.P. and G.P., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1210-MI-618 |
| | ) | |
| J.H. and T.H., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71J01-1207-MI-2

**May 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

D.P. and G.P. (together, "Grandparents"), the biological grandparents of J.P., appeal the trial court's denial of their motion to correct error. Grandparents raise several issues, and we revise and restate the issues on appeal as:

I.  Whether Grandparents may challenge the trial court's order granting the petition for adoption of J.P. by foster parents J.H. and T.H. (together, "Foster Parents"); and

II. Whether the trial court erred in ordering Grandparents to pay $2,000 in attorney fees.

Foster Parents request appellate attorney fees pursuant to Ind. Appellate Rule 66(E). We decline to address Grandparents' arguments related to the adoption of J.P. by Foster Parents, remand for a new hearing on Foster Parents' request for fees and costs, and deny Foster Parents' request for appellate attorney fees.

## FACTS AND PROCEDURAL HISTORY

In March 2009, the Department of Child Services ("DCS") removed J.P., who was born on November 6, 2007, from his biological parents based on concerns of the living conditions and J.P.'s physical condition and later placed J.P. with Foster Parents.[1] On petition by DCS, the court declared J.P. a child in need of services ("CHINS") and adopted a plan for reunification with the child's biological parents.

On July 12, 2010, DCS filed petitions for the involuntary termination of parental rights to J.P. On October 8, 2010, Grandparents filed a petition to adopt J.P. On October

---

[1] Portions of the facts and procedural history are taken from this court's previous memorandum opinion in In the Matter of the Termination of the Parent-Child Relationship and Adoption of J.P., No. 71A03-1106-JT-248 (Ind. Ct. App. Mar. 16, 2012) (appeal from cause numbers 71J01-1006-JT-154 ("Cause No. 154"), 71J01-1009-AD-115 ("Cause No. 115") (adoption petition by Foster Parents), 71J01-1010-AD-129 ("Cause No. 129") (adoption petition by Grandparents), and 71J01-0903-JC-277 ("Cause No. 277")), trans. denied. The record does not include copies of the trial court's chronological case summaries for Cause Nos. 154, 115, 129, and 277.

14, 2010, Foster Parents filed a petition to adopt J.P. A three-day hearing regarding the termination and adoption proceedings was held on February 17, March 11, and March 18, 2011. On May 11, 2011, the trial court terminated the parental rights of J.P.'s biological parents, denied Grandparents' petition to adopt J.P., and stated its intent to grant Foster Parents' petition to adopt J.P. pending a final hearing. Grandparents and J.P.'s biological parents appealed.

On March 16, 2012, this court issued an opinion which held that the trial court did not err in terminating the parental rights of J.P.'s biological parents. See In the Matter of the Termination of the Parent-Child Relationship and Adoption of J.P., No. 71A03-1106-JT-248, slip op. at 16 (Ind. Ct. App. Mar. 16, 2012), trans. denied. With respect to the adoption petition by Grandparents under Cause No. 129, this court noted that the trial court found that J.P. had not bonded with Grandparents, that Parents believed that the adoption by Grandparents would allow them to maintain contact with the child, that DCS did not consent to the adoption of the child by Grandparents, that in May 2009 Grandparents requested custody of J.P. and Parents did not want J.P. placed with Grandparents because they did not get along with them, and that J.P. had a muted, reserved relationship with Grandparents. Id. at 17. We reviewed the record and held, considering the facts most favorable to the trial court's decision, that the evidence supported the decision that the adoption of J.P. by Grandparents was not in J.P.'s best interests, and we affirmed the court's decision to deny Grandparents' petition for adoption. Id. at 18-19.

3

With respect to the adoption petition filed by Foster Parents under Cause No. 115, we noted that the trial court concluded that the adoption of J.P. by Foster Parents was in the best interests of the child and that Foster Parents' petition for adoption would be granted subject to a final hearing. Id. at 19. We found that the trial court's decision to delay its decision on Foster Parents' adoption did not dispose of that claim, and we dismissed that portion of the appeal regarding Foster Parents' adoption petition because it was neither a final judgment nor an appealable interlocutory order. Id. at 19-22. Grandparents filed a petition for transfer to the Indiana Supreme Court, which was denied on June 29, 2012.

On April 13, 2012, DCS filed a Petition for Release of Wardship under Cause No. 277 which informed the trial court that the child's case plan was adoption, that a final adoption hearing was to be held that day, that the child's parents had no rights regarding the child as those rights were terminated pursuant to the court's order, and that Foster Parents had filed a petition for adoption to which DCS has consented, and DCS recommended that J.P. be released from supervision. On April 18, 2012, the trial court entered an Order Terminating Jurisdiction in which it stated that, after reviewing the progress report and hearing evidence and statements of interested persons, it found that the child's custodians complied with the child's case plan and that the court's jurisdiction was terminated.

On May 17, 2012, Grandparents filed a notice of appeal with the trial court with respect to the April 18, 2012 order.[2] The notice of appeal listed Cause Nos. 115, 129, and

---

[2] The notice of appeal in the appellant's appendix is not file-stamped but the certificate of service includes a date of May 17, 2012. The notice of appeal indicates that the appeal was taken from an order

4

277 in the caption. The trial court sent a letter dated May 25, 2012, to counsel for Grandparents indicating that this court had affirmed the decision of the trial court under Cause No. 129 and that the parental rights of J.P.'s biological parents were terminated. The letter further noted, as to Cause No. 277, that the case was closed since the child had been adopted, that the court was "not clear as to exactly what it is that [Grandparents] wish[ed] to appeal," and that the court would take no further action unless it was provided "with some legal authority to justify [] processing [the] notice of appeal." Appellant's Appendix at 13.

On July 20, 2012, the court held a hearing.[3] At the hearing, the court noted that Grandparents were not parties to the case involving Foster Parents' petition for adoption, Grandparents' counsel stated that the cases had been consolidated, the court observed that Grandparents' petition was denied and affirmed on appeal, counsel for Foster Parents noted that counsel for Grandparents did not appear in the Foster Parents' case, and the court noted that Grandparents did not file a motion to contest the adoption by Foster Parents. Grandparents' counsel argued that Grandparents were asking for an opportunity to appeal the final order in Foster Parents' case, that counsel had been locked out of the Quest system with respect to Foster Parents' case, and that Grandparents were denied due process. Counsel for DCS stated that the trial court never consolidated the various cases under one cause number, that the cases were heard on one day and thus it may seem as though they were consolidated although they were not, that this court consolidated the

---

"believed to have been entered on or about April 18, 2012," and that counsel had not been "able to access any of the case numbers . . . although he is listed as attorney of record as the cases have been sealed, nor was he notified of any hearing in a timely manner so he could appear." Appellants' Appendix at 15.

[3] A copy of the transcript of this hearing is included in the appellants' appendix.

5

cases for purposes of appeal only, and that separate orders had been entered in each of the different cases. The court stated its opinion that Grandparents were not entitled to an appeal from the judgment in Foster Parents' adoption action but that it would open a miscellaneous cause number, later assigned cause number 71J01-1207-MI-2 ("Cause No. 2"), from which this appeal arises, and "issue an order file marking" Grandparents' notice of appeal so that they could seek guidance from this court regarding their right to appeal if they chose to do so. Id. at 34.

On July 24, 2012, under Cause No. 2, the court issued an order stating that it had received a notice of appeal on May 17, 2012, and noted that it did not believe that Grandparents had any standing to appeal in part because they had their day in court as to their petition for adoption and they never appeared in the Foster Parents' adoption case nor filed a motion to contest that adoption. The court noted that it deemed it inappropriate to re-open the Foster Parents' adoption case and had opened Cause No. 2. The court concluded that Grandparents have no standing to appeal any of the cases listed on their May 17, 2012 notice of appeal.

On July 31, 2012, Foster Parents filed a Motion to Tax Fees and Costs and a memorandum of law in support of the motion. The motion requested an order requiring Grandparents to pay Foster Parents' attorney fees in defending unjustified litigation pursuant to Ind. Code § 34-52-1-1. In its memorandum, Foster Parents argued that Grandparents' attempt to appeal the order granting the petition for adoption of J.P. by Foster Parents is simply continued harassment of Foster Parents and devoid of any rational legal basis and that Grandparents never had standing to contest Foster Parents'

6

petition for adoption. Foster Parents also argued that Grandparents filed their action in bad faith and showed a deliberate disregard of established law and a deliberate attempt to contravene the rulings of the trial court. On August 10, 2012, the court held a hearing on Foster Parents' motion.[4] On August 16, 2012, the court entered an order granting Foster Parents' Motion to Tax Fees and Costs and awarded Foster Parents attorney fees in the amount of $2,000.

On September 10, 2012, Grandparents filed a Verified Petition for Change of Venue of Judge for Cause arguing that Judge Peter Nemeth made comments from the bench on July 20, 2012 giving the impression that he had a personal bias and prejudice against Grandparents and their counsel.

On September 17, 2012, Grandparents filed a Verified Motion to Set Aside Judgment and Motion to Correct Error requesting the court to set aside its August 16, 2012 order. In the motion, Grandparents noted that no appeal was taken after the May 17, 2012 notice of appeal was filed, that the court had *sua sponte* scheduled the July 20, 2012 hearing, and that neither the trial nor appellate rules required or authorized such a hearing. Grandparents argued that the trial court did not issue any findings of fact, made no legal conclusions, and had no billing to use to support the amount awarded. On October 11, 2012, the court held a hearing on Grandparents' petition and motion at which the parties presented arguments. On October 11, 2012, the court entered an order denying Grandparents' petition for change of judge and motion to correct error. Grandparents now appeal the October 11, 2012 order.

---

[4] The record does not contain a transcript of this hearing.

DISCUSSION

I.

We first address whether Grandparents may challenge the order granting Foster Parents' petition for adoption. Grandparents argue the trial court did not have jurisdiction when it granted Foster Parents' petition for adoption and that the court denied them due process by locking them out of the Quest system. Foster Parents maintain that the adoption of J.P. by Foster Parents is final and not subject to re-litigation. Foster Parents argue that the granting of the finalization of the adoption by Foster Parents was entirely independent of the denial of Grandparents' petition for adoption, that Grandparents did not have standing to contest the adoption, and that, after the July 24, 2012 order in which Grandparents were given the opportunity to request an appeal, they chose not to do so.

We note that this court's March 16, 2012 memorandum opinion affirmed the termination of the parental rights of J.P.'s biological parents and the trial court's decision to deny Grandparents' petition for adoption of J.P. In addition, this court dismissed the appeal under Cause No. 115 related to Foster Parents' adoption petition as there had not been a final judgment in that matter. Grandparents do not dispute that they did not appear in Cause No. 115 and did not file a motion to contest the adoption by Foster Parents. The trial court entered an Order Terminating Jurisdiction upon motion by DCS under Cause No. 277 on April 18, 2012, and Grandparents filed a notice of appeal on May 17, 2012, with respect to that order. Following a hearing on July 20, 2012, the court issued an Order Regarding Notice of Appeal on July 24, 2012, noting that Grandparents never appeared in the Foster Parents' adoption case or filed a motion to contest that

8

adoption and concluding that Grandparents had no standing to appeal. Grandparents did not timely file a motion to correct error or a notice of appeal with respect to the trial court's July 24, 2012 order and do not assert that they pursued any appeal or sought any guidance from this court related to their right or ability to do so following the order.

Subsequently, on August 16, 2012, the trial court ruled on Foster Parents' Motion to Tax Fees and Costs. On September 17, 2012, Grandparents filed a motion to set aside judgment and to correct error with respect to the August 16, 2012 order, and on October 11, 2012, the trial court denied Grandparents' motion. Grandparents filed a notice of appeal on October 11, 2012, with respect to the trial court's October 11, 2012 order. The October 11, 2012 notice of appeal and the trial court's October 11, 2012 and August 16, 2012 orders relate to Foster Parents' Motion to Tax Fees and Costs and not to the trial court's July 24, 2012 order or other orders related to the adoption petition by Foster Parents. Even had Grandparents October 11, 2012 notice of appeal identified the trial court's orders on or before July 24, 2012, as the appealed orders, such a notice of appeal would have been untimely filed as to those orders. See Ind. Appellate Rule 9(A)(1) ("A party initiates an appeal by filing a Notice of Appeal with the Clerk . . . within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary . . . ."); Ind. Appellate Rule 9(A)(5) ("Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited. . . ."). We decline to address the arguments of Grandparents in their briefs on appeal related to Foster Parents' adoption of J.P. Based upon the record, we do not disturb the grant of the petition for adoption of J.P. by Foster Parents.

II.

The next issue is whether the trial court erred in ordering Grandparents to pay $2,000 in attorney fees. Grandparents argue the court abused its discretion in granting the award and that the court made no findings or conclusions and had no billing to use to support the amount awarded. Foster Parents maintain the award was justified due to Grandparents' continued unreasonable litigation.

Ind. Code § 34-52-1-1(b), provides in part:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

An award of attorney fees under Ind. Code § 34-52-1-1 is afforded a multi-step review. Knowledge A-Z, Inc. v. Sentry Ins., 857 N.E.2d 411, 423 (Ind. Ct. App. 2006) (citing Emergency Physicians of Indianapolis v. Pettit, 714 N.E.2d 1111, 1115 (Ind. Ct. App. 1999), adopted in relevant part by 718 N.E.2d 753 (Ind. 1999)), reh'g denied, trans. denied. First, we review the trial court's findings of fact under the clearly erroneous standard, and second, we review de novo the trial court's legal conclusions. Id. Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. Id. Here, in its August 16, 2012 Order on Motion to Tax Fees and Costs, the trial court did not enter findings. The trial court did not expressly

10

indicate the legal conclusion on which its award of attorney fees was based. We view the trial court's order as an implicit conclusion that Grandparents' motions were frivolous, unreasonable, and groundless or in bad faith. We review this conclusion *de novo*. See id. 423-424.

For purposes of awarding attorney fees under Ind. Code § 34-52-1-1, a claim is frivolous if it is made primarily to harass or maliciously injure another, if counsel is unable to make a good faith and rational argument on the merits of the claim, or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. Id. at 424. A claim is unreasonable if, based upon the totality of the circumstances, including the law and facts known at the time of filing the claim, no reasonable attorney would consider the claim justified or worthy of litigation. Id. A claim is groundless if no facts exist which support the legal claim relied upon and presented by the losing party. Id. Finally, a claim is litigated in bad faith if the party presenting the claim is affirmatively operating with furtive design or ill will. Id.

In addition to the fact that the trial court did not enter findings in its August 16, 2012 order or indicate the basis upon which it awarded $2,000 in attorney fees, we observe that the record does not include a transcript of the August 10, 2012 hearing on Foster Parents' Motion to Tax Fees and Costs. Further, Foster Parents' motion did not include or attach an affidavit or invoice of Foster Parents' counsel setting forth the attorney fees and other costs which they purportedly incurred. Although an affidavit of Foster Parents' counsel together with an attached letter to Grandparents' counsel dated

11

August 27, 2012, and an invoice statement dated August 27, 2012, were included in Foster Parents' appellees' brief, those documents were generated after the August 10, 2012 hearing and the court's August 16, 2012 order granting Foster Parents' Motion to Tax Fees and Costs. In fact, the items were filed with the court after the October 11, 2012 hearing on Grandparents' motion to correct error.

We also observe that, at the October 11, 2012 hearing, counsel for Grandparents argued that the court erred in awarding fees to Foster Parents and contested the amount of the fees. From our reading of the hearing transcript, it appears that Judge Nemeth, repeatedly and rather emphatically, challenged the arguments of Grandparents' counsel that Grandparents' claims at the July 20, 2012 hearing, made by Grandparents' previous counsel, were not frivolous. We note that the fact that a party makes an argument which is not ultimately persuasive or for which there is little existing authority, taken alone, does not necessarily mean that the party's claim was frivolous, unreasonable, or groundless. Near the end of the hearing, the following exchange occurred regarding the amount of the attorney fees:

> THE COURT: I guess the only question the Court has is the amount of the fees. Does it require that you submit an hourly – Did you do that?
>
> [Foster Parents' Counsel]: Your Honor, I've provided that to [Grandparents' Counsel].
>
> [Grandparents' Counsel]: Right, at my request on the date we had the hearing. I was here present on that date, Your Honor, and she just told the Court and the Court granted it.

12

THE COURT: I think for purposes of appeal, I think the appellate court probably would require that there be some showing.

[Foster Parents' Counsel]: Specific fee application, certainly, Your Honor.

THE COURT: And I think that that's the issue that I would feel is still an open issue obviously. The Court issued an Order in this case with findings and –

* * * * *

I think that [Foster Parents' Counsel] needs to file with the Court the hourly record for that and I think you said you've already provided that to counsel?

[Grandparents' Counsel]: Yes, she has.

[Foster Parents' Counsel]: I have.

THE COURT: Well, maybe we could have another hearing. What is it about that that you feel is unreasonable?

[Grandparents' Counsel]: The amount that counsel was granted. At the hearing there was no itemized listing as far as what she was seeking and she just asked for –

THE COURT: I understand that. Now, she has submitted to you the itemized list. If you have an objection to it, if you want to wait and come back again, that's fine. I'd be happy to do that. I'm here until the end of the year, so I can certainly hear it at another time, but I thought I would save . . . you the trouble. If there's an argument you want to make as to the amount?

[Grandparents' Counsel]: Not at this time, Your Honor. I would like to have this rescheduled to come back because I want to look at that and I want to look at some other matters, but she was kind enough to submit to me her itemized list. I did not bring that with me today. I want to look it over, so I

13

|                             |                                                                 |
|-----------------------------|-----------------------------------------------------------------|
|                             | can make a reasonable argument to the Court for your determination. |
| [Foster Parents' Counsel]:  | Your Honor, he's had since about August 27 to look it over. I have provided [Grandparents' Counsel] with an itemized, to the minute listing of my fees, which at that point in time totaled $2,986.70. Setting another hearing is incurring additional fees for my client, so I'm not really certain – |
| THE COURT:                  | What did I order; two thousand? |
| [Foster Parents' Counsel]:  | Two thousand, yes. |
| THE COURT:                  | . . . Has that been filed with the court? |
| [Foster Parents' Counsel]:  | It has not. I certainly can. |
| THE COURT:                  | Alright. If you wish to file that, file it. I don't really see any reason, [Grandparents' Counsel], to have a hearing in this case. The order will stand. The Motion to Correct Error is denied. If on appeal this matter gets reversed, comes back here, I doubt very much that I will be here, so I think the Motion for Change, I won't delay any ruling on because I don't think there's any basis for it. . . . [I]f for some reason the Appellate Court sees whatever point you've been trying to make, they will reverse and send it back and someone else will be hearing it. |
| [Grandparents' Counsel]:    | Thank you, Your Honor. |
| [Foster Parents' Counsel]:  | Thank you. |
| THE COURT:                  | So ordered. You will get that on file? |
| [Foster Parents' Counsel]:  | I will just file it with a notice to the court, if that's okay. |
| THE COURT:                  | Okay, thank you. |

Transcript at 13-16. An entry in the court's chronological case summary ("CCS") on October 12, 2012 indicates that Foster Parents' counsel filed an "Affidavit As Requested By The Court." Appellant's Appendix at 3.

Because the trial court failed to indicate the basis upon which it awarded $2,000, to review evidence related to an appropriate amount of attorney fees, or to identify any factors which may bear on the reasonableness of the award, we remand to the trial court to hold a new hearing on Foster Parents' Motion to Tax Fees and Costs.[5]

### III.

The next issue is whether Foster Parents are entitled to appellate attorney fees. Ind. Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees is limited to instances when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Orr v. Turco Mfg. Co., Inc., 512 N.E.2d 151, 152 (Ind. 1987). An appellate tribunal must use extreme restraint in exercising its discretionary power to award damages on appeal "because of the potential chilling effect upon the exercise of the right to appeal." Tioga Pines Living Ctr., Inc. v. Ind. Family & Social Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied. Indiana appellate courts have classified claims for appellate attorneys' fees into substantive and procedural bad faith claims. Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003) (citing Boczar v. Meridian St.

---

[5] Grandparents also argue that the trial court abused its discretion in denying its motion for change of judge. We need not reach this issue as we remand for a new hearing on Foster Parents' Motion to Tax Fees and Costs and the hearing will be heard by a different trial court judge.

15

Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001)). To prevail on a substantive bad faith claim, the party must show that "the appellant's contentions and arguments are utterly devoid of all plausibility." Id. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Id. at 346-347.

While we find Grandparents' arguments regarding the trial court's grant of Foster Parents' petition for adoption and their ability to appeal the court's orders on that matter to be untimely and unpersuasive, we find merit to Grandparents' argument regarding the court's attorney fee award and remand for a new hearing on Foster Parents' Motion to Tax Fees and Costs. Grandparents' contentions on this issue were thus not utterly devoid of all plausibility. We deny Foster Parents' request for appellate attorney fees. See Taflinger Farm v. Uhl, 815 N.E.2d 1015, 1019 (Ind. Ct. App. 2004) (noting that the appellant's contentions were not utterly devoid of all plausibility).

CONCLUSION

For the foregoing reasons, we remand to the trial court with instructions to conduct a new hearing on Foster Parents' Motion to Tax Fees and Costs, we decline to address Grandparents' arguments related to the adoption of J.P. by Foster Parents, and we deny Foster Parents' request for appellate attorney fees.

Remanded for further proceedings.

RILEY, J., and BRADFORD, J., concur.

16