**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 25 2014, 6:13 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ROBERT M. ENDRIS**
Akron, Ohio

ATTORNEYS FOR APPELLEE:

**THOMAS W. VANDER LUITGAREN**
**SHELLI S. ANDERSON**
Van Valer Law Firm, LLP
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT MORRIS ENDRIS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1303-DR-130 |
| | ) | |
| JENNIFER LYNN ENDRIS, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia S. Emkes, Judge
Cause No. 41D02-1102-DR-96

**March 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Robert Morris Endris ("Father"), *pro se*, appeals the trial court's order related to child support, parenting time, and contempt. Father raises four issues which we revise and restate as:

I.      Whether the trial court abused its discretion when it ordered that all parenting time between Father and his daughter stop immediately and ordered specific parenting time between Father and his other children;

II.     Whether the trial court erred in denying Father's motion to modify child support;

III.    Whether the trial court erred in making certain findings of fact and conclusions;

IV.     Whether the trial court erred when it ordered paternal grandmother's visitation with the parties' children; and

V.      Whether the trial court abused its discretion when it found Father in contempt of court.

Mother requests appellate attorney fees pursuant to Ind. Appellate Rule 66(E). We affirm in part, reverse in part, and remand.[1]

FACTS AND PROCEDURAL HISTORY

Jennifer Lynn Endris ("Mother") and Father were married in 2002, and at some point Father adopted Mother's two children, J. and D. Mother and Father also had two

---

[1] In the standard of review portion of his brief, Father states that he also appeals the trial court's order for Father to pay Mother's attorney fees, but fails to discuss the issue further or present a cogent argument. Consequently, this argument is waived. See, e.g., Loomis v. Ameritech Corp., 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to cite authority or provide cogent argument), reh'g denied, trans. denied. Further, in his reply brief, Father "concedes this issue is moot since he has fully paid the entire amount of arrears and attorney's fees ordered . . . ." Appellant's Reply Brief at 10-11.

children, M. and E.[2] In June 2010, Father quit his job at Fellon McCord that he had held for less than a month.

On February 10, 2011, Father filed a verified petition for dissolution of marriage. That same day, the parties agreed to the terms of a Divorce Decree Settlement ("Settlement"). Father, an attorney, prepared the Settlement, which stated in part that he would pay child support in the amount of $500 weekly or $2,000 monthly, whichever is more. The Settlement also stated: "Payments shall begin February 2011, continuing indefinitely even if a court orders a lower payment amount." Appellant's Appendix at 78. Father also agreed to Mother and the children relocating to Texas, to Mother choosing the place of residence in the event of future moves, and to pay an annual educational allowance of $1,750. Additionally, the Settlement states that Mother shall consent to reasonable visitation upon request and cooperate with planning to effectuate visitation. On April 11, 2011, the court entered a dissolution decree and approved the Settlement.

In April 2011, Mother moved with the children to Texas, and Father helped with the move, making two trips to Texas himself. Father also visited the children in Texas twice and had regular communication with the children until April 2012.

On April 30, 2012, Father filed a Petition to Modify/Motion to Enforce Final Decree. Father alleged that his employment was terminated due to no fault of his own, he had no income, and he could not sustain the weekly support amount or the educational allowance. The petition alleged that the parties were no longer able to decide between

---

[2] At the time of the hearing in December 2012, M. was eight years old, J. was fifteen years old, and D. was twelve years old. The parties do not point to and our review of the record does not reveal E.'s age.

3

themselves what was reasonable visitation, and that it was "necessary for the Court to issue a more specified Order, including long distance parenting time under the Indiana Supreme Court Parenting Time Guidelines, video contact via the Internet, and frequent phone contact." Id. at 18. Father also requested "an Order modifying the children's physical custody if necessary to prevent [Mother] from eliminating/alienating the children from his life." Id.

On May 21, 2012, Father filed a Motion for Rule to Show Cause/Motion to Enforce Final Decree alleging that Mother was not complying with the order of the court in that she cut off all communication between him and his children, thereby denying him "reasonable visitation." Id. at 20. The court referred the matter to mediation, but the mediation was unsuccessful.

On August 6, 2012, Mother filed a petition for contempt alleging that Father had failed, neglected, and refused to pay child support as ordered by the court and was $9,958 in arrears as of July 27, 2012, and had not paid the April 2011 educational allowance of $1,750. At some point, Father moved to Ohio, and, on October 22, 2012, became employed there and began earning $108,000 annually.

On December 4, 2012, the court held a hearing. At the beginning of the hearing, Mother's counsel moved for an *in camera* interview of the children. The court discussed the possibility of interviewing the children and told the parties not to tell the children what to tell the court. Father objected to the *in camera* interview and argued that he was "clamoring for the children to be either evaluated or interviewed" in early May of 2012 and stated that "now after all this time and watching their attitudes toward me, turn so

4

negative, so hundred and eighty degrees from where they were before, that's what I'm concerned about." Transcript at 53. The court noted Father's objection and then explained how it would interview the children. Father withdrew his objection, and the court granted the motion for an *in camera* interview.

Mother requested that Father's parenting time be phased in pursuant to the Indiana Parenting Time Guidelines. Father stated: "I'm not interested in having her held in contempt, just to have access and parenting time going forward." Transcript at 4.

On January 4, 2013, the court entered an order which denied Father's motion to modify child support, denied Father's request to find Mother in contempt, granted in part Father's request that the court order specific parenting time, ordered that all parenting time between Father and D. stop immediately, found that Father intentionally and willfully disobeyed the court-ordered terms in the decree regarding the payment of child support and educational expenses, found an arrearage, ordered Father to pay the arrearage in full, and ordered Father to pay Mother's attorney $2,000. Specifically, the order states in part:

> 4. The Decree did not require the support or educational support payments be paid through the Clerk of the Courts; therefore, such vagueness has, in part, lead to the confusion over whether said payments are current. **The Court orders that all support and support related payments commencing December 4, 2012 be paid by Income Withholding Order through the Clerk of the Johnson County Circuit and Superior Courts and through Indiana State Central Collection Unit (ISCCU). The Court issued an Income Withholding Order on December 4, 2012 ordering child support herein paid at the rate of Five Hundred Dollars ($500.00) per week plus the educational support payment at the rate of Thirty Three Dollars and Sixty-Five Cents ($33.65) per week.** The parties agreed that the educational

support payment be paid weekly as opposed to yearly as set forth in the Decree.

5. Both parties agreed that the Court should interview the children in chambers and off the record, and the Court granted Mother's Motion for In-Camera with all four (4) children. The Court interviewed the children individually on December 11, 2012. The In-Camera interviews lasted a total of approximately Ninety (90) minutes.

6. Regarding Father's Motion to Modify Child Support, the Court finds Father has not met his burden of proof and the Court now denies his motion. The evidence at trial indicates that the parties negotiated the child support amount based on numerous factors, not only Father's income at the time. Father's reduced wages were short-lived and at this time pursuant to the Indiana Child Support Obligation Worksheet (ICSOW) attached hereto and incorporated herein, it is recommended that Father pay Six Hundred Sixty-Nine Dollars ($669.00) per week support as opposed to the sum the parties agreed to, which is over One Hundred Fifty Dollars ($150.00) less than what he pays now without the educational supplement (which was agreed in addition to regular support). Although Father asked the Court to impute wages to Mother, the Court notes the same is not based on the evidence, the law, or common sense. Mother home-schools the children and it would be unreasonable to impute wages to her at the same time. Considering Father provides all transportation for parenting time, the amount he currently pays is reasonable. There is insufficient evidence to support a reduction in child support, even for the specific time period Father requests. Of particular note is that Father voluntarily terminated his employment which was the basis for his temporary reduction in income and his resultant motion to reduce his support payments.

7. Regarding Father's requests to find Mother in contempt for denying him parenting time, and for alienating the children from him, to the extent Father did not withdraw his motion at trial (which he did at various times, but then testified in support of the same), the Court finds Mother did not intentionally or willfully violate the parenting time provisions of the Decree.

8. Regarding Father's request that the Court order specific parenting time, the Court finds since the parties cannot agree on the same, and since Mother joins in said request and requests in addition that any schedule be slowly implemented, the Court grants the same in part. The Court now modifies the Decree and orders parenting time as

6

follows based on the evidence including the lengthy in-camera interviews with the children:

a. Regarding [J.], the Court gives greater weight to his wishes due to his age. The Court finds it is in [J.'s] best interest that due to his wishes, his extensive involvement in his church, sports, musical interests, other interests, and with his friends it would be unreasonable to Order extensive parenting time. Further, [J.] does not desire to have regular webcam or face-time chats with Father, in part based on his other commitments. Therefore, the Court orders that Father and [J.] have one Fifteen (15) or Twenty (20) minute conversation by telephone each week on either Wednesday or Thursday evening at a time agreed between [J.] and Father. Further, [J.] shall travel to Indiana to visit with his paternal grandparents at their home while Father is present or not (at the discretion of Father) for Seven (7) days each June or July as agreed between the parties and for Seven (7) days each November or December as agreed between the parents. During said trips Father is granted an additional period of Five (5) days with [J.] at his home in Ohio each time. Father shall pay for the costs of all transportation for said parenting time.

b. Regarding [M.] and [E.], it is in their best interests that Father exercise the same parenting time with them as with [J.], and in addition, after Father has exercised two (2) years of the above parenting time, he is granted Two (2) additional periods of Seven (7) days each of parenting time as the parties agree with at least Sixty (60) days advance time for the agreed parenting time to take place. Said parenting time shall be exercised at Father's home in Ohio or at his parents' home in Indiana at his discretion. Father shall pay for the costs of all transportation for said parenting time. Father shall be allowed to contact the children Two (2) times each week as agreed between the parties either by phone, web cam, face-time or otherwise and said contacts shall be for a period of approximately Thirty (30) minutes total for both children. If Father desires the contact to be by web cam or face-time, he shall

7

provide the computer or telephone for the same to Mother at his cost.

c. In regard to [D.], the Court finds that if the Court does not terminate her parenting time with Father her emotional and physical well-being are in jeopardy. The Court finds there is sufficient evidence after interviewing [D.] and the other children that [D.] is being severely affected emotionally, mentally, and physically under the current parenting time conditions and it is in her best interests that the Court Order all parenting time on the phone, by internet, and in person stop immediately. [D.] has experienced frequent episodes of headaches, stomach aches, intestinal illness, lack of sleep, loss of appetite, depression, anxiety, fear, and distress before, during, and after parenting time which are directly related to her discomfort with parenting time.

d. When Father visits the area where Mother resides, if he provides reasonable notice of the same, the parties shall agree to a period of reasonable parenting time, and failing to agree, the Court orders that Father shall have parenting time with [J.], [M.] and [E.] for Three (3) days and Three (3) nights as long as appropriate accommodations can be made for said parenting time at a nearby hotel and as long as the same does not interfere with prior arranged events the children have.

9. Regarding Mother's Motion for Contempt, the Court finds Father intentionally and willfully disobeyed the Court ordered terms in the Decree in regard to the payment of child support and educational expenses. The Court recognizes Father's reduced income during several months; however, Father was gainfully employed during several weeks that he failed to pay support in the agreed amount. The Court is allowing Father a credit on child support for the payments he made directly to Mother for her relocation or made on her behalf for her relocation as the Court has the discretion as a matter of law to do. The Court finds the arrearage as of December 4, 2012 on child support and educational expenses totaled Eight Thousand Two Hundred Forty Eight Dollars ($8,248.00) for support due since February 2011. The Court orders Father to pay said support in full by paying the sum of One Thousand Dollars

8

($1,000.00) through the Clerk of the Court and ISCCU each month commencing on March 1, 2013 until paid in full.

Appellant's Appendix at 11-13.

On February 5, 2013, Father filed a Motion to Correct Errors/Motion for Reconsideration. The court denied his motion without a hearing. On February 12, 2013, Father filed a Motion for Expedited Rehearing and alleged that Mother informed him that the children no longer resided in Texas and that she was moving to Arizona. The court found Father's motion moot because there was not a pending hearing to expedite and it had denied Father's motion to correct error.

STANDARD OF REVIEW

Before addressing the merits, we observe that we review a trial court's denial of a motion to correct error for an abuse of discretion, reversing only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law. Perkinson v. Perkinson, 989 N.E.2d 758, 761 (Ind. 2013).

When the trial court enters findings *sua sponte*, the specific findings will not be set aside unless clearly erroneous. Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it. Id. We neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence and reasonable inferences drawn therefrom that support the findings. Id. We review the trial court's legal conclusions *de novo*. Id.

9

DISCUSSION

I.

The first issue is whether the trial court abused its discretion when it ordered that all parenting time between Father and D. stop immediately and ordered specific parenting time between Father and M. and E. With respect to D., Father contends that the description of D.'s symptoms "was provided solely by minor children off the record with no evidence that then-twelve year old [D.] has ever seen a medical provider for a single one of these symptoms before, during, or after the *in camera* interview." Appellant's Brief at 11. Father argues that if D.'s symptoms were "real symptoms and illnesses," then D. should have received treatment from a trained medical professional instead of the court presuming that Father was the sole cause of the reported ailments and that his complete removal from his daughter's life was the remedy. Id.

With respect to M. and E., Father argues that the court provided no link between J.'s desire for involvement in extra-curricular activities and the best interests of M. and E. Father asserts that the court did not provide any legal basis for allowing J.'s wishes for reduced parenting time to dictate his siblings' parenting time with Father or cite to evidence or provide an explanation as to why limiting his parenting time with them was in their best interest. Father contends that the extreme departure from the Parenting Time Guidelines without a written explanation and without evidence in the record warrants reversal. Specifically, he argues that "[i]nstead of the seven summer weeks plus one-half of winter break and all of spring break described in the Guidelines (generally more than

10

nine weeks in total), the court restricted Father to just ten days parenting time in his home annually for two years, and just twenty-four days annually thereafter." Id. at 14.

Mother points to her testimony that the children did not want to communicate with Father despite her encouraging them to have a relationship with him. She argues that there is adequate evidence beyond the *in camera* interviews to support the trial court's parenting time order. She asserts that this situation involves a great distance, that the children are homeschooled by her, and that she has *de minimus* employment while Father has substantial income. In his reply brief, Father points out that it is unclear who requested the termination or restriction because Mother requested only that his parenting time be phased in. Father also argues that if the trial court's order is allowed to stand, then his first opportunity to present evidence against termination and restriction of his parenting time will improperly begin with the burden on him to justify lifting termination and restrictions.

The parties also disagree regarding whether the trial court phased in additional visitation time for Father with respect to M. and E. Father argues that the phase-in provision of the Parenting Time Guidelines is inapplicable to this case because his contact has been frequent, regular, and extensive. Mother argues that the phase-in request was reasonable and justified given that the children had seen Father only twice for visitation in one and one-half years since the dissolution. Mother contends that the court did not phase in any telephone conversation time and that it merely phased in in-person parenting time by awarding Father an additional two weeks after a period of two years.

When reviewing a trial court's determination of parenting time issues, we will grant latitude and deference to our trial courts, reversing only when the court abuses its discretion. Tamasy v. Kovacs, 929 N.E.2d 820, 837 (Ind. Ct. App. 2010). No abuse of discretion occurs if there is a rational basis supporting the trial court's determination. Id. Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Id. We will not reweigh the evidence or judge the credibility of the witnesses. Id. In all parenting time issues, courts are required to give foremost consideration to the best interest of the child. Id. "[T]he trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children – the kind of qualities that appellate courts would be in a difficult position to assess." MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005).

The landmark Supreme Court case of Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054 (2000), did an extensive historical analysis of parental rights in this country. Perkinson, 989 N.E.2d at 761. "The liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel, 530 U.S. at 65, 120 S. Ct. at 2060. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166, 64 S. Ct. 438, 442 (1944). "The history and culture of Western civilization

reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S. Ct. 1526, 1541-1542 (1972).

Ind. Code § 31-17-4-2 governs modification or denial of parenting time and provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

"Indiana recognizes that the right of a noncustodial parent to visit his or her children is a 'precious privilege.'" D.B. v. M.B.V., 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009) (quoting Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), trans. denied), reh'g denied. Thus, although a court may modify a parenting time order when the modification would serve the best interests of the child or children, a parent's visitation rights shall not be restricted unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development. Id. Even though the statute uses the word "might," this court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. Id. (citing Stewart v. Stewart, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988), reh'g denied, trans. denied). Generally, a party who seeks to restrict a parent's

visitation rights bears the burden of presenting evidence justifying such a restriction. Id. at 1275.

Ind. Code § 31-17-4-1 provides in part:

(b) The court may interview the child in chambers to assist the court in determining the child's perception of whether parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

The provision for in-chambers interviews with minor children allows the judge to fulfill his duty without placing the child in an adversarial position between battling parents. Truden v. Jacquay, 480 N.E.2d 974, 978 (Ind. Ct. App. 1985). It is for the judge to determine the weight and credibility to be accorded a child's disclosures, and it is obvious that this determination is facilitated by assurances to the child that his conversations will be strictly confidential. Id. "[I]n cases where child custody is in issue, and with the parties' consent, confidential interviews between the court and the children involved should be encouraged where the minors are of sufficient age and understanding." Blue v. Brooks, 261 Ind. 338, 342, 303 N.E.2d 269, 272 (1973). "Such a procedure better enables the trial court to ascertain the best interests of the child, because the constraints of open court with both parents and witnesses present are lifted." Id. "[A] modification may not be supported solely upon such an extrajudicial inquiry." Simons v. Simons, 566 N.E.2d 551, 556 (Ind. Ct. App. 1991); see also Truden, 480 N.E.2d at 979.

Mother cites Blue v. Brooks, 261 Ind. 338, 303 N.E.2d 269 (1973), for the proposition that because Father agreed to the terms of an *in camera* interview of the children, he cannot now challenge its outcome. In Blue, the appellant argued that the trial

14

court committed reversible error by not including in the record the results of its private conversations with children in chambers. 261 Ind. at 342, 303 N.E.2d at 272. The appellant did not attack the procedure employed by the trial court, but asserted that the trial court based its judgment upon this extrajudicial inquiry. Id. The Court held that "both parties consented to the private interview and, therefore, cannot now challenge its outcome." Id. However, the Court then went on to address the "critical issue" of "whether the trial court based its judgment upon this confidential discussion with the children," and observed that "[a] judgment based upon extra judicial inquiry cannot stand." Id. The Court held:

> As to appellant's contention, we are persuaded that the better rule is that so long as the trial court's decision does not rest primarily upon the results of a private interview, it is not error to exclude the results of said interview from the record:
>
> > "Frequently these conferences are conducted with a promise by the trial judge that the information is confidential, that the child need not repeat that which has been said and the judge will not repeat that which has been said. It is vital that this confidence be observed.
> >
> > "In this, one of the most difficult responsibilities of a trial judge, the judge is privileged to consider the information so secured in his final decision. The information given to the trial judge during the in chambers conference may well be the crucial and determining factor in the court's decision. We do not say that if the record is overwhelming in favor of one decision that the in chambers conference alone will be sufficient to sustain a contrary finding for that problem is not before us. In this case, the reported evidence sustains the decision and we must assume that the decision is fortified and strengthened by the in chambers conference."

Bailey v. Bailey, (1966), 3 Ariz. App. 138, 142, 412 P.2d 480, 484.

15

Id. at 342-343, 303 N.E.2d at 272. The Court concluded: "we have examined the record in the case at bar hereinabove, and we have found substantial evidence on the record to sustain the trial court's judgment. Therefore, we find no error upon this issue." Id. at 343, 303 N.E.2d at 272.

To the extent that Mother argues that there is adequate evidence beyond the *in camera* interviews, we observe that Mother testified that, based upon her observation, the children had not wanted to communicate with Father, that she had not attempted to alienate the children from Father, and that she had not coached the children's communication with him. Mother also testified that Father participated in two moves to Texas and visited Texas twice. On cross-examination, Mother did not agree that several of the children frequently ask to call Father at various points through the week or that M. frequently asks her if she could talk with Father or otherwise communicate with him.[3]

While Mother's testimony may suggest that the children did not display an interest in communicating with Father, we cannot say that such evidence constitutes evidence independent of the *in camera* interviews that the parenting time would endanger the children's physical health or significantly impair the children's emotional development. Therefore, we are unable to affirm the trial court where the reasoning was based solely upon the extrajudicial interviews. We conclude that the trial court abused its discretion

---

[3] Mother also argues that Father "testified himself that he had received a text message from [D.] after his visit in March 2012, which prompted him to file his Motion for Contempt in May, just three weeks after his Petition to Modify/Motion to Enforce." Appellee's Brief at 25. Immediately prior to the portion of the transcript cited by Mother, Father stated that D. sent him a text message telling him that she loved him and missed him after his visit in March, and Mother objected on the basis of hearsay. The court sustained the objection, Father then stated that it would go to his state of mind with respect to feeling the need to file a motion for contempt, and the court stated "I won't take the content of what was said that you receive a text message, and based on that is why you acted the way you did." Transcript at 45.

and the parenting time modification must be reversed. See McCauley v. McCauley, 678 N.E.2d 1290 (Ind. Ct. App. 1997) (holding that the trial court's judgment may not rest primarily upon the results of a private *in camera* interview and because there was no evidence of record supporting the trial court's decision terminating visitation, the ruling was an abuse of discretion and must be reversed), trans. denied; Simmons, 566 N.E.2d at 556-557 (holding that a modification may not be supported solely upon an extrajudicial inquiry, that the evidence supporting allegations was insufficient to support a modification of the custody order, and reversing the trial court's order).

With respect to M. and E., we find the Parenting Time Guidelines instructive. "The Indiana Parenting Time Guidelines are based on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each parent." Preamble to Ind. Parenting Time Guidelines. The purpose of the Guidelines "is to provide a model which may be adjusted depending upon the unique needs and circumstances of each family." Id. Section III of the Parenting Time Guidelines addresses parenting time when distance is a major factor and provides: "Where there is a significant geographical distance between the parents, scheduling parenting time is fact sensitive and requires consideration of many factors which include: employment schedules, the costs and time of travel, the financial situation of each parent, the frequency of the parenting time and others." The Commentary to Section III states:

> When distance is a major factor, the following parenting time schedule may be helpful:

> * * * * *

17

*(C)*    ***Child 5 Years of Age and Older.***   For a child 5 years of age and older who attends a school with a traditional school calendar, seven (7) weeks of the school summer vacation period and seven (7) days of the school winter vacation plus the entire spring break, including both weekends if applicable. Such parenting time, however, shall be arranged so that the custodial parent shall have religious holidays, if celebrated, in alternate years.

If the child attends a school with a year-round or balanced calendar, the noncustodial parent's parenting time should be adjusted so that the noncustodial parent and child spend at least as much time together as they would under a traditional school calendar.[4]

"There is a presumption that the Indiana Parenting Time Guidelines are applicable in all cases governed by these guidelines." Ind. Parenting Time Guidelines, Scope of Application, § 2 (subsequently amended January 4, 2013 (effective March 1, 2013; August 26, 2013)).[5] Deviations from the Guidelines by the court "that result in parenting time less than the minimum time set forth below must be accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case." Id. "The written explanation need not be as formal as Findings of Fact and Conclusions of Law; however, it must state the reason(s) for the deviation." Commentary to § 2 (subsequently amended January 4, 2013 (eff. March 1, 2013; August 26, 2013)).

The trial court ordered that M. and E. travel to Indiana for seven days each June or July and seven days each November or December and Father is to have an additional five

---

[4] As noted, the record does not reveal E.'s age. However, Mother does not challenge Father's application of subsection (C) which addresses children five years of age or older.

[5] Subsection 1 of the "Scope of Application" provides that the Guidelines "are applicable to all child custody situations, including paternity cases and cases involving joint legal custody where one person has primary physical custody. However, they are not applicable to situations involving family violence, substance abuse, risk of flight with a child, or any other circumstances the court reasonably believes endanger the child's physical health or safety, or significantly impair the child's emotional development." (Subsequently amended January 4, 2013 (eff. March 1, 2013; August 26, 2013)).

days with them in Ohio during each trip.[6]  The court also ordered that "after Father has exercised two (2) years of the above parenting time, he is granted Two (2) additional periods of Seven (7) days each of parenting time as the parties agree with at least Sixty (60) days advance time for the agreed parenting time to take place."  Appellant's Appendix at 12.  The court also ordered that when Father visits the area where Mother resides he shall have parenting time with M. and E. for three days and three nights as long as appropriate accommodations can be made for the parenting time.  Thus, the court awarded Father an initial visitation with M. and E. of twenty-four days with additional time if Father travels from Ohio to Texas and a total of thirty-eight days of parenting time after two years with additional time if Father travels from Ohio to Texas.  This constitutes a deviation from the Parenting Time Guidelines of seven weeks of summer, seven days of school winter vacation plus the entire spring break.  While the court stated that it was in M. and E.'s best interests to exercise the parenting time it awarded Father, we cannot say that such a conclusory finding alone is sufficient to warrant the deviation.  We remand to the trial court to either enter an order pursuant to the Parenting Time Guidelines or enter an order which provides an explanation for the deviation.  See Haley v. Haley, 771 N.E.2d 743, 752 (Ind. Ct. App. 2002) (remanding a cause where the trial court provided no explanation for its deviation from the Guidelines).

To the extent the parties disagree as to the phase-in period, we observe that the Commentary to Section II of the Guidelines states:

> Where there is a significant lack of contact between a parent and a child, there may be no bond, or emotional connection, between the parent and the

---

[6] We will later address more fully Father's contention that the trial court erred by awarding him visitation for only ten days (five days for each of the two trips) in Ohio where he now resides.

19

child. It is recommended that scheduled parenting time be "phased in" to permit the parent and child to adjust to their situation. It may be necessary for an evaluation of the current relationship (or lack thereof) between the parent and the child in order to recommend a parenting time plan. A guardian ad litem, a mental health professional, a representative from a domestic relations counseling bureau or any other neutral evaluator may be used for this task.

The record reveals that Father helped Mother on two occasions to move to Texas in April 2011 and visited the children in Texas on two other occasions.[7] Mother testified that Father had a weekly phone call on Sundays with the children. Mother agreed that Father had video web chats with the children that would last two or three hours and that he had regular communication with the children until April 2012, which was the month that Father filed his Petition to Modify/Motion to Enforce Final Decree. We cannot say that prior to April 2012 there was a significant lack of contact between Father and the children. Accordingly, we conclude that the phase-in period was improper.

## II.

The next issue is whether the trial court erred in denying Father's motion to modify child support. "We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that

---

[7] The following exchange occurred during the direct examination of Mother:

> Q   And tell the Court, well how many times has [Father] saw the children since April 11, 2011, other than helping you move out to Texas?
>
> A   There were two moves to Texas and two additional visits.
>
> Q   And when were they?
>
> A   They were Father's Day, 2011, and Easter was, that was one of the moves, and then March of this year. Father's Day 2011, and March, 2012.

Transcript at 18.

child support modifications will not be set aside unless they are clearly erroneous.'" Lea v. Lea, 691 N.E.2d 1214, 1217 (Ind. 1998) (quoting Stultz v. Stultz, 659 N.E.2d 125, 128 (Ind. 1995)). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

Father argues that his voluntary termination of employment was not the basis for his modification of support. He asserts that he testified that he left employment at Fellon McCord on June 2, 2010, eight months before the dissolution petition, more than ten months before the court issued its final decree, and nearly two years before Father filed his petition to modify child support. Father also notes that he stated several times without challenge that at the time he filed his petition to modify he had no income at all until securing a part-time job in mid-May.

Mother contends that Father's petition to modify child support seeks the very action which Father agreed, and was ordered, to disregard, i.e., a court order lowering his support obligation. The divorce decree settlement states that Father would pay child support in the amount of $500 weekly or $2,000 monthly, whichever is more and that

21

"[p]ayments shall begin February 2011, continuing indefinitely even if a court orders a lower payment amount." Appellant's Appendix at 78. Mother also argues that Father's claim of a change of circumstances goes against the clear language and intended operation of the agreement and also fails factually. She maintains that even if Father did not have any income from the time the petition was filed on April 30, 2012 until the middle of the following month, the court properly found that the brief two-week period of unemployment along with several months of part-time employment thereafter did not rise to the level of substantial and continuing. Mother also points out that by the time of the hearing, Father had been gainfully employed full time for several months. She notes that Father offered no testimony or evidence specifying what employment his motion refers to, when he lost the alleged employment, and why. She also argues that there was no evidence that Father lost a job due to no fault of his own which changed his circumstance between the entry of the decree and his motion.

Even assuming that the Settlement did not preclude Father from seeking a modification of child support,[8] we cannot say that Father has demonstrated a change in circumstances so substantial and continuing as to make the terms unreasonable or that he

_____

[8] Courts have previously addressed this issue to some extent. See MacLafferty, 829 N.E.2d at 941 n.5 (observing that the Legislature seemed to be saying that if more than a year had passed since the last modification and one parent's income had changed so much that his or her obligation under the Child Support Guidelines would change by 20%, a parent is entitled to modification, but that the result "might well be affected by prior agreements of the parties"); Meehan v. Meehan, 425 N.E.2d 157, 160 (Ind. 1981) ("[T]he fact that a child support order has been entered pursuant to the terms of a settlement agreement, even where, as here, it is intended as forever determinative by the parties, is of no consequence to the question whether the order should subsequently be modified."); Reinhart v. Reinhart, 938 N.E.2d 788, 793 (Ind. Ct. App. 2010) (holding that father was estopped to rely on that differential under Ind. Code § 31-16-8-1(2) as the sole ground for modifying child support because father agreed to a support amount in excess of the guideline amount, holding that father may petition to modify child support if he could demonstrate a substantial and continuing change in circumstances so as to warrant modification of his child support obligation, and noting that Meehan construed a prior version of the modification statute, which did not provide for modification if the support amount differed by twenty percent from the Guideline amount).

has been ordered to pay an amount in child support that differs by more than twenty percent from the amount that would be ordered by applying the child support guidelines.

Ind. Code § 31-16-8-1 governs modification of child support orders and provides:

(a) Provisions of an order with respect to child support . . . may be modified or revoked.

(b) Except as provided in section 2 of this chapter, modification may be made only:

    (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

    (2) upon a showing that:

        (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

        (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

(c) Modification under this section is subject to IC 31-25-4-17(a)(6).

The record reveals that Father was earning approximately $1,500 a month at the time that he entered into the Settlement in April 2011, that he filed his petition to modify on April 30, 2012, and had a part-time job in mid-May. He testified that he received some public defender appointments and very few private clients "through that period." Transcript at 4. By October 22, he was employed in Ohio with an income of $108,000.

23

Under the circumstances, we cannot say that Father has demonstrated a showing under Ind. Code § 31-16-8-1.

III.

The next issue is whether the trial court erred in certain findings of fact and conclusions. Father challenges the court's findings regarding: (A) his income; and (B) the reference to paternal grandparents.

A.    Father's Income

First, Father argues that the trial court overstated his weekly average gross income by almost 70% and erroneously concluded that his annual salary was $180,000 instead of $108,000. Father contends that this was not a harmless error because the court's findings requiring him to pay Mother's attorney's fees, his ability to pay all transportation for parenting time in Indiana and Ohio, his ability to travel to visit his children where they live, and the arrearage repayment schedule all were based upon an annual gross income that was $72,000 more than he actually earns.

Mother concedes that from the transcript, it does appear that the court misunderstood Father's testimony as to his income, but argues that using the smaller figure of $108,000 would not change the outcome and therefore would be harmless error. She argues that if the Court had used the $2077 figure that Father contends is the correct amount as his weekly gross income in its attachment to the Order, and the guidelines would have provided for a recommended support obligation of $574 which is more than the $500 Father agreed to pay in the Settlement. She concludes that given that Father is financing the travel for all parenting time, "this could still be considered reasonable and

24

within the Court's discretion based upon the parties' prior agreement which would have exceeded the guidelines when [Father] was making more money." Appellee's Brief at 31.

The Child Support Obligation Worksheet attached to the court's order indicated that Father's weekly gross income was $3,462 which constitutes approximately $180,000 annually. At the hearing, Father testified that the annual salary from his new full-time job was $108,000. Under the circumstances, we conclude that the use of a weekly gross income of $3,462 for Father on the child support obligation worksheet which was attached to the court's order was clearly erroneous. Under the Guideline Schedules for Weekly Support Payments, if Father earns $108,000 annually, Father would pay $574 per week in child support. As argued by Mother, this amount is greater than the $500 agreed to by Father in the Settlement. Nonetheless, given that the child support obligation worksheet was attached to the trial court's order, we remand for the trial court to correct Father's weekly gross income to reflect an annual salary of $108,000.

B. Paternal Grandparents

Father alleges that the court's reference to the paternal grandparents is improper because there was no reference to the children's paternal grandfather anywhere in the record due to the fact that he died in 1990. Mother argues that whether or not the paternal grandfather is alive is irrelevant for purposes of the visitation order and a harmless error on the trial court's part. We conclude that the trial court erred in not referring to only the paternal grandmother in its order.

25

# IV.

The next issue is whether the trial court erred when it ordered the paternal grandmother's visitation with the parties' children in her home for seven days twice each year. Father argues that the court had no jurisdiction over the paternal grandmother ("Grandmother") as a non-party who had not received notice she would be subject to the court's order. Father contends that "[a]llowing this Order to stand would permit the court to effectively place Grandmother on 'house arrest' twice each year while Father and Mother schedule parenting time dates, without Grandmother ever having been brought under the jurisdiction of the trial court." Appellant's Brief at 24. Father points out that his motion to correct error affirmed that Grandmother had never been a primary caregiver to the parties' children and that almost all prior visitation with Grandmother had involved Grandmother's travel to where the children resided. Father also contends that the burden of this requirement to split parenting time in Indiana and in Ohio in terms of both cost and travel time are not in the children's best interest.

Mother argues that the parenting time ordered to take place in Indiana was supported by the record and points to her statements at the hearing that the children were currently with their uncle in Franklin, Indiana, and Father's statement at the hearing that he was going to pick up the children and take them to his mother's house and spend as much time with them as he could. Mother argues that the record reflects that Father indicated under oath and on the record to the judge that he did not intend to arrange for childcare while he was at work, which is why the children would be visiting with him at his mother's house. Mother also argues that "[s]ince both parents had moved out of state

at the time of the hearing, this was a way for the court to fashion some of the father's visitation with his children 'back home again in Indiana.'" Appellee's Brief at 34. She points to the following exchange:

[Father]: Right, in fact, I'm going to pick up the children and take them to my mother's house . . .

COURT: Okay.

[Father]: . . . and spend the weekend days, or as much, basically as much time as I can get with them.

COURT: Okay.

[Father]: At this point starting a new job in a new town, I'm not willing to try to find a, child care provider . . .

Transcript at 51.

The court ordered J. to travel to Indiana to visit with his paternal grandparents at her home in Indiana "while Father is present or not (at the discretion of Father)" for seven days each June or July and seven days each November or December. Appellant's Appendix at 12. The court also ordered that Father exercise the same parenting time with M. and E. as with J. and that parenting time shall be exercised at Father's home in Ohio or at his parents' home in Indiana at Father's discretion.

To the extent that Mother relies upon Father's testimony in the foregoing exchange, we observe that immediately after that, the following exchange occurred:

COURT: *Okay, so you're talking about after this period of time that you're here when you're, when they come and visit in Ohio you want them to come to your house in Ohio?*

[Father]: *Yes, and I wanted them . . .*

27

| | |
|---|---|
| COURT: | Okay, I was very confused with that issue, I just want to make sure. |
| [Father]: | Well, and I lived in . . . |
| COURT: | I understand. |
| [Father]: | . . . and I lived in my mother's home, my childhood home from the time that the house was foreclosed until . . . |
| COURT: | That's good, I was just real confused about where that stood right now. . . . |

Transcript at 51-52 (emphasis added). Based upon this exchange, we cannot say that Father was suggesting that Grandmother have visitation with the children at her house in Indiana instead of Father having visitation with the children in Ohio.

Moreover, we observe that dissolution proceedings must comply with the Indiana Rules of Civil Procedure, see Ind. Code § 31-15-2-1, and that Ind. Trial Rule 4(A) provides that "[t]he court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance, or who is subjected to the power of the court under any other law." Further, Ind. Trial Rule 24 governs the right or ability to intervene in a matter and sets forth a procedure for doing so.[9] The record shows that Grandmother was not a party to the dissolution proceedings and had not intervened in the proceedings pursuant to the Indiana Rules of Civil Procedure. The parties do not point to the record to show that Grandmother was served with a summons. Accordingly, we reverse the trial court's order that Grandmother host the children. See Campbell v. Campbell, 993 N.E.2d 205, 212 (Ind.

---

[9] Ind. Trial Rule 24(C) provides in part that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5" and that "[t]he motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought."

Ct. App. 2013) (reversing the trial court's order that paternal grandparents and maternal grandmother participate in family therapy where grandparents were not parties to the dissolution proceedings, had not intervened, and were not served with a summons), trans. denied.

V.

The next issue is whether the trial court abused its discretion when it found Father in contempt. To be held in contempt, a party must have willfully disobeyed a court order. Hamilton v. Hamilton, 914 N.E.2d 747, 755 (Ind. 2009). The determination of whether a party is in contempt is a matter left to the discretion of the trial court. Id. We will reverse a trial court's contempt findings only if there is no evidence or inferences drawn therefrom to support them. Id.

Father argues that there was no evidence that he had willfully or intentionally remained unemployed or underemployed or that he had the financial ability to pay the agreed amount. Father also argues that contempt was unnecessary as an enforcement tool to coerce Father's payment of his child support obligation. Father contends that he could not be held in contempt for terminating his employment because this action was taken eight months prior to the court's jurisdiction over him. Father also challenges the court's finding that he was gainfully employed during several weeks that he failed to pay support in the agreed amount and that the court implied that it understood he "terminated his employment at Fellon-McCord on June 2, 2012, instead of 2010." Appellant's Brief at 22. Mother argues that Father failed to uphold his obligation to pay support and that the court was justified and entitled to impose a contempt sanction on Father.

The court's order states:

> Regarding Mother's Motion for Contempt, the Court finds Father intentionally and willfully disobeyed the Court ordered terms in the Decree in regard to the payment of child support and educational expenses. The Court recognizes Father's reduced income during several months; however, Father was gainfully employed during several weeks that he failed to pay support in the agreed amount. The Court is allowing Father a credit on child support for the payments he made directly to Mother for her relocation or made on her behalf for her relocation as the Court has the discretion as a matter of law to do. The Court finds the arrearage as of December 4, 2012 on child support and educational expenses totaled Eight Thousand Two Hundred Forty Eight Dollars ($8,248.00) for support due since February 2011. The Court orders Father to pay said support in full by paying the sum of One Thousand Dollars ($1,000.00) through the Clerk of the Court and ISCCU each month commencing on March 1, 2013 until paid in full.

Appellant's Appendix at 13. Based upon the language in the foregoing paragraph, the trial court did not specifically find Father in contempt. Therefore, this issue is moot.

VI.

We next turn to Mother's request for appellate attorney fees. Appellate Rule 66(E) provides in part that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorneys' fees under Ind. Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003) (citing Orr v. Turco Mfg. Co. Inc., 512 N.E.2d 151, 152 (Ind. 1987)). In addition, while Ind. Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon

30

the exercise of the right to appeal. Id. (citing Tioga Pines Living Ctr., Inc. v. Ind. Family & Social Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied). A strong showing is required to justify an award of appellate damages and the sanction is not imposed to punish mere lack of merit but something more egregious. Harness v. Schmitt, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010).

Indiana appellate courts have classified claims for appellate attorneys' fees into substantive and procedural bad faith claims. Thacker, 797 N.E.2d at 346 (citing Boczar v. Meridian St. Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001)). To prevail on a substantive bad faith claim, the party must show that "the appellant's contentions and arguments are utterly devoid of all plausibility." Id. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Id. at 346-347.

Mother argues that Father "sought the very same thing he agreed NOT to abide by, an order reducing his support payments to [Mother]." Appellee's Brief at 39. She also asserts that Father's motion claimed he lost employment due to no fault of his own, but that he never presented any testimony or evidence in support of such a claim. She further contends that she has been forced to hire counsel and accumulate attorney's fees and has been forced to travel to Indiana on at least two separate occasions for this case.

As discussed above, we cannot say that Mother has shown that Father's contentions and arguments are utterly devoid of all plausibility; in fact, he has prevailed on same of his contentions. Accordingly, we decline to award appellate attorney fees.

CONCLUSION

For the foregoing reasons, we reverse the trial court's order with respect to visitation, affirm the court's denial of Father's motion to modify child support, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and BARNES, J., concur.